### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **RENE COCHISE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1: 06-CV-00980** |
| ) | **(RJL)** |
| ) | |
| **DIRK KEMPTHOME,** ) | |
| **Department of the Interior** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## RENE COCHISE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Rene Cochise, hereby moves for partial summary judgment on four claims of retaliation on the ground that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.

The grounds for this motion are stated fully in the Statement of Material Facts As To Which There Is No Genuine Issue, accompanying Affidavit and Exhibits, and Memorandum of Points and Authorities in support thereof.

Respectfully submitted,

*Frazer Walton, Jr.*
Frazer Walton, Jr. #374301
920 Burns Street, S.E.
Washington, D.C. 20019
(202) 584-7572

Counsel for Plaintiff Cochise

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing plaintiff's partial motion for summary judgment, memorandum of law, exhibits, affidavit and order were served on the 5th day of June, 2008, and delivered by the Court's electronic mail system.

*Frazer Walton, Jr.*
Frazer Walton, Jr.

## TABLE OF CONTENTS

PAGE

Introduction  ……………………………………………………..    1

Procedural History  ……………………………………………..    2

Relevant Factual Background………………………………………..    3

Argument  ……………………………………………………..    4

    I.    The Defendant Issued Plaintiff A Letter of Counseling
    [Which Included Information that was Confidential] in
    Retaliation for Plaintiff's Prior EEO Activity, and in an
    Effort to Impede Plaintiff's Career Ladder Promotion to
    the GS-14 Grade  …………………………………..    5

    II.    Plaintiff was Retaliated against by the Defendant when
    Time Sensitive and Important Documents were placed
    In the Director's Locked Office, which prevented her
    From being able to fulfill her Duties as Acting Director……    9

    III.    Chris Kenny Retaliated Against Plaintiff Cochise When
    He Grabbed Plaintiff's Hand and Forcefully Removed A
    Travel Voucher she was Holding  …………………….    11

    IV.    Plaintiff's Supervisor Retaliated against her when he
    Notified her that he was Conducting an "Administrative
    Investigation" into Plaintiff's Misconduct and if she
    Gave any False Answers to his Questions, she could be
    Subjected to Criminal Prosecution  …………………….    15

## ATTACHMENTS

Statement of Undisputed Material Facts

Cochise Affidavit

Exhibits 1-12

Order

i

# TABLE OF CASES

PAGE

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986)  ..............        4

*Burlington Northern & Santa Fe Railway Co. v. White,*
    546 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)  ..........        5

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)  .....................        4

*Devera v. Adams,* 874 F.Supp. 17, 21 (D.D.C. 1995)  .....................        8

*Forman v. Small,* 271 F.3d 285, 297 (D.C. Cir. 2001),
    *cert. denied,* 536 U.S. 958, 122 S.Ct. 2661, 153 L.Ed.2d 836
    (2002) ................................................................        4

*Holbrook v. Reno,* 196 F.3d 255, 263 (D.D. Cir. 1999)  ..................        7

*Johnson v. Digital Equip. Corp.,* 835 F.Supp. 14, 18 (D.D.C. 1993).....        4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 587 (1986)    ..........................................        4

*Moore v. Ashcroft,* 401 F.Supp.2d 1 (D.D. Cir. 2005)  .....................        7

*Plummer v. Safeway, Inc.,* 1995 WL 129100 *1 (D.D.C. March 17,
    1995) ................................................................        4

*Michell v. Baldrige,* 759 F.2d 80, 86 (D.C. Cir. 1985)  .....................        7

*Paguin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C. Cir.
    1979) ................................................................        7

*Rochon v. Gonzales,* 438 F.3d 1210 (D.C. Cir. 2006)  ...................        5

*Townsend v. WMATA,* 746 F.Supp. 178 (D.D.C. 1990)  ...................        8

*Washington v III. Department of Revenue,* 420 F.3d
    660 (7th Cir. 2005)    ..............................................        5

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | | |
|---|---|---|
| RENE COCHISE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1: 06-CV-00980** |
| | ) | **(RJL)** |
| DIRK KEMPTHOME, | ) | |
| **Department of the Interior** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff, Rene Cochise ("Plaintiff") has moved for partial summary judgment on several claims of retaliation that are listed under count two of the complaint. The claims are listed under paragraphs 29, 32-36, 40, 42, 44 and 45.

Plaintiff, Rene Cochise, was formerly employed as a Policy Analyst, GS-301-13, at the Office of Native American Affairs, United States Department of Interior from 1999 until 2004. Plaintiff was the only Native-American Policy Analyst employed within the Office of Native American Affairs during the relevant time period. During her employment tenure, Plaintiff filed three discrimination complaints wherein she alleged that she was subjected to race (American-Indian) discrimination because of her superior's relationship with a co-worker, and that the relationship created a hostile work environment that prevented her from being promoted to a career ladder grade GS-14. Plaintiff also alleged that she was subjected to acts of retaliation because she previously reported and filed discrimination complaints against her supervisor.

The allegations contained in this federal court complaint include, among other things, that (1) Plaintiff received a letter of counseling from her supervisor that included confidential information; (2) her supervisor failed to provide work assignments and information that were necessary for her advancement to the GS-14 grade; (3) Plaintiff was issued a directive by her supervisor instructing her not to meet with any Indian tribes unless first approved by him, and he did not apply the directive to other similarly- situated employees; (4) Plaintiff was not given access to important and time sensitive office correspondence, which prevented her from performing her duties as acting director; (5) Plaintiff was physically assaulted by her supervisor; (6) Plaintiff's supervisor suspended her open travel authorization; and (7) Plaintiff was warned by her supervisor, that he was conducting an administrative investigation into her "misconduct," and that she could be subjected to criminal prosecution, if she gave false answers to his questions.   Plaintiff also alleged that she was treated in a disparate manner because of her race, and in retaliation for having filed previous complaints of discrimination.

## **PROCEDURAL HISTORY**

After the equal employment opportunity administrative complaints were filed, the Defendant issued a final agency decision finding no discrimination.  Plaintiff appealed the agency's decision before the U.S. Equal Employment Opportunity Commission (EEOC) and requested an administrative hearing.  The Defendant filed a motion for summary judgment before the EEOC Administrative Judge and the motion was denied.  Pursuant to EEOC Regulation 29 C.F.R. § 1614.109 (2003), an administrative hearing was conducted.  On March 23, 2004, the EEOC administrative Judge issued a decision finding that the Plaintiff was not subjected to national origin discrimination or retaliation.

2

On June 15, 2004, the Plaintiff appealed the decision of the EEOC Administrative Judge before the U.S. Equal Employment Opportunity Commission – Office of Federal Operations. On or about March 3, 2006, the Office of Federal Operations affirmed the decision of the Administrative Judge without comment, and issued a right to sue letter to the Plaintiff. After exhausting her administrative remedies, Plaintiff filed the instant lawsuit.

## RELEVANT FACTUAL BACKGROUND

Plaintiff filed retaliation complaints against the Defendant after filing initial charges of discrimination. Those retaliatory actions adversely affected Plaintiff's ability to perform her duties as a Policy Analyst, GS–13. Plaintiff also maintains that the retaliatory actions created a hostile work environment and prevented her from receiving a career ladder promotion to the position of Policy Analyst, GS–14. The agency's retaliatory actions are outlined in paragraphs 29, 34, 40, 42, 44 and 45 of the complaint.

The motion for partial summary judgment is limited to the following issues. They include: (1) On December 10, 1999, Plaintiff alleges that in retaliation for her previous participation in the EEO counseling process, she was issued a letter of counseling by her supervisor, Chris Kenny, and the letter contained prohibited confidential information; (2) On March 28, 2000, Plaintiff was not given important and time sensitive office correspondence which prevented her from performing her duties as acting director; (3) On April 28, 2000, Plaintiff's supervisor physically assaulted her when he lunged toward the Plaintiff, grabbed her hand, and forcefully removed a travel voucher she was holding; and (4) On March 15, 2001, Plaintiff's supervisor informed her that he was conducting an "administrative investigation" into Plaintiff's misconduct for failure to follow his instructions, and that if she gave any false answers to his questions, she could be subjected to criminal prosecution.

## ARGUMENT

Summary judgment is appropriate whenever "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

In considering a summary judgment motion, the Court must view the evidence in light most favorable to the plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48. Summary judgment should be granted if there is insufficient evidence for a jury to return a verdict in favor of the nonmoving party. Id., at 249.

In employment discrimination cases, summary judgment "must be viewed with special caution because intentional discrimination . . . [is] difficult for a plaintiff to establish." *Plummer v. Safeway, Inc.,* 1995 WL 129100, *1 (D.D.C. March 17, 1995) (citing *Johnson v. Digital Equip. Corp.,* 835 F. Supp. 14, 18 (D.D.C. 1993)). Title VII not only prohibits federal agencies from discriminating on the basis of race and/or gender, 42 U.S.C. § 2000e-16; it also prohibits them from retaliating against employees for the assertion of their rights under Title VII. *Forman v. Small,* 271 F.3d 285, 297 (D.C. Cir. 2001), *cert. denied,* 536 U.S. 958, 122 S. Ct. 2661, 153 L.Ed.2d 836 (2002).

4

Plaintiff's motion for partial summary judgment will show that there are no material facts in dispute, and for the reasons set forth below, Plaintiff respectfully moves the Court to grant her motion for partial summary judgment.

### I.    The Defendant Issued Plaintiff A Letter of Counseling [Which Included Information that was Confidential] in Retaliation for Plaintiff's Prior EEO Activity, and in an Effort to Impede Plaintiff's Career Ladder Promotion to the  GS–14 Grade.

The U.S. Supreme Court has now defined retaliation, and held that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.  As we have explained, the Courts of Appeals have used differing language to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation.  We agree with the formulation set forth by the Seventh and the District of Columbia Circuits.  In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'  *Rochon,* 438 F. 3d, at 1219 quoting *Washington,* 420 F. 3d, at 662)."  *Burlington Northern & Santa Fe Railway Co. v. White, 546 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).*

In June 1999, Plaintiff and her supervisor, Chris Kenny, participated in an EEO mediation session, and signed an EEO Settlement Agreement that resolved several grievances that Plaintiff filed against her supervisor, Chris Kenny.   The parties agreed that the mediation and settlement agreement were to remain confidential. *See, exhibit # 1, attached.*  On November 30, 1999, Plaintiff contacted an EEO counselor to report that her supervisor, Chris Kenny was engaging in continued acts of reprisal and discrimination.

On December 10, 1999, Chris Kenny issued a Letter of Counseling to Plaintiff Cochise. In the Letter of Counseling, Mr. Kenny discussed the confidential mediation and the terms of the settlement agreement. Mr. Kenny also placed the Letter of Counseling in the Plaintiff's personnel file on January 18, 2000. *See, Exhibit # 3.* Plaintiff Cochise denied that she engaged in inappropriate conduct, and she continues to maintain that the release of confidential information in the Letter of Counseling was improper and purely an act of retaliation.

Although the June 1999 mediation and settlement agreement were confidential in nature, Chris Kenny violated the terms and conditions of the mediation and settlement agreement when he discussed the confidential proceeding and agreement in the December 1999 Letter of Counseling. *See,Exh. # 9, Cochise Depo., dated, 09/18/07- pgs. 76- 77:22.*

Plaintiff Cochise contacted an EEO Counselor on November 30, 1999, and ten (10) days later she was issued a Letter of Counseling that cited the confidential mediation and settlement agreement entered into in June 1999. This was a per se violation of the terms and conditions of the mediation and settlement, and the disclosure of the confidential agreement was an act of retaliation. The placement of the letter of counseling in Plaintiff's personnel file by the Defendant, and the disclosure of confidential settlement issues adversely affected Plaintiff's job performance, created a hostile work environment, and hindered her opportunity for a career ladder promotion.

During Plaintiff's trial deposition, the parties agreed that the June 1999 mediation was confidential, and that there were confidential provisions included in the settlement agreement, yet Chris Kenny mentioned the confidential mediation in the Letter of Counseling that he issued to the Plaintiff. At Plaintiff's deposition, the following questions were asked by the government and Plaintiff gave the following response.

6

Q.    The mediation session was in June of '99, and that was the confidential - -
      it was confidential?

A.    Yes, it was.

Q.    There are confidential provisions with that and the Settlement Agreement?

A.    Yes.

Q.    I think that's something we need to deal with, that these are not to be
      shared. I mean they're being shared right now, but that's probably
      inappropriate.

*Exh. # 9, Cochise Depo., 09/18/07, p. 88:16-25.*

The Defendant's own counsel recognized the confidentiality of the mediation and

settlement agreement, yet the Defendant purposely discussed the confidential settlement issues in

his Letter of Counseling. The Defendant also documented the personnel action by placing the

Letter of Counseling in Plaintiff's personnel file. This was clearly an act of retaliation because

of Plaintiff's prior EEO activity. Defendant's discriminatory actions were met to discourage the

Plaintiff from engaging in further contact with the EEO Counselor.

The disclosure of confidential information in the Letter of Counseling is undisputed. It is

also undisputed that the counseling letter was permanently documented in Plaintiff's personnel

file. These actions clearly support Plaintiff's claim of retaliation. To sustain a retaliation claim

under Title VII, a Plaintiff must establish that: 1) he or she engaged in a statutorily-protected

activity; 2) he or she was subjected to adverse personnel action; and 3) a causal connection exists

between the adverse action and the protected activity. *Michell v. Baldrige,* 759 F. 2d 80, 86

(D.C. Cir. 1985); *Paguin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C. Cir. 1997);

*Holbrook v. Reno,* 196 F. 3d 255, 263 (D.D. Cir. 1999). If the plaintiff establishes a *prima facie*

case of retaliation, the analysis then follows as that for a discrimination claim. *Moore v.*

*Ashcroft,* 401 F. Supp. 2d 1 (D.D. Cir. 2005).

7

In the instant case, Plaintiff was engaging in protected activity when she contacted the EEO counselor and reported that the Defendant had violated the terms and conditions of the June 1999 settlement agreement. Secondly, Plaintiff was subjected to adverse personnel action because the letter included the disclosure of confidential information. The letter was placed in her personnel file and that too would ultimately affect her ability to obtain a promotion to the career ladder GS–14 grade level. Thirdly, there was a causal connection between the adverse action and the protected activity because the Plaintiff received the letter of counseling ten (10) days after she reported the matter to the EEO counselor. She had also signed a June 1999 confidential settlement agreement which was the subject of the EEO complaint.

Chris Kenny was well aware of Plaintiff's prior EEO activity because he participated in the June 1999 EEO mediation, and he signed the June 1999 confidential settlement agreement. The disclosure of the confidential agreement was an act of reprisal, and Plaintiff's November 30, 1999 complaint clearly established the causal connection between the complaint and the December 10, 1999 reprisal letter.

In each incident, the Defendant's reprisals were taken shortly after Plaintiff's protected EEO activity, and resulted in the Plaintiff being subjected to adverse action. *See, e.g., Townsend v. WMATA,* 746 F. Supp. 178 (D.D.C. 1990) (holding two years not "shortly after" and too long to support inference); *Devera v. Adams,* 874 F. Supp. 17, 21 (D.D.C. 1995) (holding eight months "not strongly suggestive" of causal link).

8

**II.     Plaintiff was Retaliated against by the Defendant when Time Sensitive and Important Information was placed in the Director's Locked Office, which prevented her from being able to fulfill her Duties as Acting Director.**

Plaintiff complained that on March 28, 2000, she was serving as Acting Director in the absence of her supervisor.[1] Leah, Chris Kenny's secretary, took time sensitive information that was coming into the office and locked the information in Mr. Kenny's office, during the period Plaintiff was serving as the Acting Director. This prevented the Plaintiff from meeting a time-sensitive agency deadline. As a result, the Department of Interior was unable to provide its comments regarding a water rights settlement bill that was pending before the U.S. Congress. *See, Exh. # 10, Cochise Depo., 10-11-07, pgs.76:14 – 77:15.*

Mr. Kenny admitted that the Plaintiff was unable to obtain time-sensitive information that was locked in his office and that Rene Cochise was unable to give timely comments to pending congressional legislation during the period that she served as the Acting Director. At his deposition, Chris Kenny made the following statement after being questioned.

Q.     Twice. In one incident where you appointed her as acting director, do you recall a situation where there was a complaint concerning material being locked in your office in your absence and where she was unable to obtain that information?

A.     Yes.

Q:     Would you tell me your knowledge of that incident.

A.     My memory was as acting director, she was asked to provide comments on some pending legislation. She was having difficulty finding the material that

---

[1] / Plaintiff filed an EEO complaint on February 29, 2000.

9

had come into the office and the report was that that frustrated her ability to be

responsive to the request.

Q.    She made an attempt to get into your office.  Is that correct?

A.    I don't know.

Q.    Do you recall whether or not your secretary ever admitted that she did not

give Mrs. Cochise certain documents that were in the possession of your

office?

A.    I have correspondence from my secretary that she had misplaced and

misunderstood and was late in getting documents to Mrs. Cochise.  That's

what I remember.

*See, Exh. # 11, Kenny Depo., 04/30/02, pgs. 32:4 – 33:5.*

Chris Kenny also stated that as an acting director, Mrs. Cochise would have a need on

occasion to go into his office.  Mr. Kenny admitted that when Mrs. Cochise attempted to get into

his office, she was prevented from doing so by his secretary.  Mr. Kenny described the actions of

his secretary as a "misunderstanding," and he stated that in his absence, his office is usually

locked.  *See, Exh. # 11, Kenny depo., 04/30/02, pgs. 33:17 – 35:9.*

As a result of the incident, the Plaintiff was unable to perform her duties as the Acting

Director, and this affected the terms and conditions of her employment.  The refusal to allow the

Plaintiff into the office was an act of retaliation because of her prior EEO activity.

First, Plaintiff engaged in a statutorily protected activity when she filed an EEO

complaint on February 29, 2000.  Second, she was subjected to adverse personnel action because

she was unable to gain access to the Director's office in order to obtain information that was

necessary for her to prepare a response to a pending congressional inquiry.  The Defendant was

10

aware of her need to gain access to the office, but he locked the office during his absence. This impeded Plaintiff's ability to perform the duties of Acting Director, and ultimately had a bearing on her performance and opportunities for promotion. Thirdly, a causal connection existed between the adverse action [office lock-out] and the EEO protected activity which occurred just one month earlier. Chris Kenny was aware of the February 29th EEO complaint because the complaint was filed against him.

Plaintiff Cochise was subjected to an act of retaliation when she was prevented from responding to the congressional inquiry.

### III.    Chris Kenny Retaliated Against Plaintiff Cochise When He Grabbed Plaintiff's Hand and Forcefully Removed A Travel Voucher she was Holding.

On April 25, 2000, Plaintiff filed a formal EEO complaint against her supervisor. Three (3) days later, on April 28, 2000, Chris Kenny notified the Plaintiff that her travel voucher was being denied. Plaintiff filed a previous EEO complaint on February 29, 2000. Plaintiff testified that Chris Kenny came into her office, grabbed and held her wrist, and pried the voucher out of her fingers to loosen her grip, removed the voucher from her hand, and then left the office. *See, Exh. # 10, Cochise depo., 10-17-07, pgs. 78-79.* This was another incident in a continuing pattern of reprisals that were taken against Plaintiff Cochise by her supervisor.

After Chris Kenny's physical altercation with Rene Cochise, Plaintiff testified that she went to another floor and went to the bathroom, and then got herself together and went home. Plaintiff stated that she went home because she urinated on herself. Plaintiff testified that she reported the assault to EEO Counselor, Lorraine Bobdian, and to Margaret Sibley when she returned to work, and she informed them that she did not feel safe around Chris Kenny. The

11

front office immediately relocated her to the Office of Policy in another work location. *See, Exh. # 10, Cochise depo., 10-11-07, pgs. 129:17 - 130:21.*

Plaintiff's version of the event is undisputed by Mr. Kenny. Mr. Kenny admitted that he attempted to jerk the package from Plaintiff's hand, and ultimately pried her fingers back to obtain the package. Chris Kenny testified at his deposition that the physical altercation with Rene Cochise took place in the following manner:

A.      The package was lying on her desk behind her. I reached down and picked up the package while informing Mrs. Cochise that I had, in fact, needed to have a copy made. Mrs. Cochise rolled around in her chair and grabbed hold of the package and stated that she would make a copy.

I jerked the package and told her that I would have a copy made. She did not loose her handhold and told me she did not trust me. I told her I understood, but because of your mutual distrust, I needed to have a copy made.

Afraid that if I jerked the package again, Mrs. Cochise might be injured by a staple, I pried her hand from the package and left.

Q.      Yeah; you can stop there. Is there any reason why you jerked the package from her?

A.      Involuntary response.

Q.      When you say an "involuntary response," you mean that –

A.      I came in with the purpose in mind of getting the package to go have a copy made, when she grabbed it, and I  involuntarily

tried to jerk it out of her hand.

Q.    Now, describe what happened when you pried it from her

hand.  What exactly did you do?

A.    She had a grip on it with her right hand, and she had her hand

over where you lay the staples off the packages I stated I would have tried

to jerk it from her hand again, but I realized that it was going to

take so much force that it would have the potential for

cutting her hand.  That's the first thing that occurred to me.

I was intent upon having the package, so I just reached down

and loosened her fingers and took the package.

Q.    For the record, I'm trying to demonstrate.  I have a fist as

if I'm gripping this book, and is it your testimony that you

pulled her fingers off of the package?  How would you describe

how you did that for me?

A.    My memory is that I pried off a couple fingers to loosen

her hand and she didn't.  At that point, she may have even released her

handhold on the package, because I don't remember exerting very

much force to do that.

Q.    Would you tell us, for the record, your height.

A.    I believe it's six feet.

Q.    Would you tell us your weight, for the record.

A.    Two twenty, 225.

*See, Exh. # 11, Kenny depo.*, 04-30-02, pgs. 94:9 – 97:2

13

Plaintiff has shown that she engaged in a statutorily-protected activity when she contacted filed an EEO complaint on April 25, 2000. On April 28th, she was subjected to an adverse employment action because her supervisor attempted to "jerk" a package from her hands, and finally "pried off a couple fingers to loosen her hand." Plaintiff Cochise testified that the matter was so upsetting that she urinated on herself, and immediately left the office and went home. When Plaintiff returned to work, she reported the incident and requested a reassignment of her work location because she did not feel safe.

Defendant also committed an assault when he grabbed Plaintiff's wrist and pried her fingers open. To convict someone of simple assault, the government must prove 1) an act on the part of the Defendant; 2) the apparent present ability to injure or frighten the victim; and 3) the intent to do the act that constituted the assault. *Macklin v. United States*, 733 A. 2d 962, 964 (D.C. 1999). Moreover, because assault is a general intent crime, "there need be no subjective intention to bring about an injury." *Anthony v. United States*, 361 A. 2d 202, 206 n. 5 (D.C. 1976).

Chris Kenny admitted that he came into the Plaintiff's office, and attempted to jerk the package from her when she would not release it. He further admitted that he pried Plaintiff's fingers back to loosen her hand. He also testified that he is six feet tall and weighs 225 pounds. Ms. Cochise testified that she weighs 118 or 119 pounds. *See, Exh. # 12, H.T. p. 1191:13.* Mr. Kenny stated that his conduct was obviously a physical action. *See, Exh. 11, Kenny Depo., p. 98:1.* The physical conduct was certainly prohibited by law, and the Defendant [Kenny] had no authority to make physical contact with the Plaintiff.

There was a causal connection between the adverse action [unauthorized physical contact] and Plaintiff's April 25, 2000, EEO protected activity because the adverse action

14

occurred shortly thereafter on April 28, 2000, three (3) days after Plaintiff filed her complaint of discrimination. The Defendant's conduct was shocking and unbecoming for a supervisory employee of the federal government. The Defendant's reprisal action ultimately impeded Plaintiff's opportunity for promotion, and heightened the hostile work environment in the office. The discriminatory action also prevented Plaintiff from performing her duties as a policy analyst.

> **IV.    Plaintiff's Supervisor Retaliated Against her when he Notified her that he was Conducting an "Administrative Investigation" into Plaintiff's Misconduct and if she gave any False Answers to his Questions, she could be Subjected to Criminal Prosecution.**

Plaintiff complained that during a meeting with Chris Kenny on March 15, 2001, he told her that he was conducting an "administrative investigation" into her misconduct for failure to follow his instructions and that if she gave any false answers to his questions that she could be subjected to criminal prosecution. Thereafter, he proposed a three-day suspension without pay for her alleged misconduct for failure to follow his instructions, but the suspension was not approved by upper management. Earlier, on July 3, 2000, and February 29, 2000, Plaintiff contacted an EEO counseling to report her supervisor's discriminatory actions. *See, Exh. # 5, ROI – WBR-01-021, p.1&2.*

Plaintiff made the following statement at her deposition:

A.    I'll be okay. Mr. Kenney asked me to answer a series of questions, and if I did not answer them, I would be subject to criminal prosecution. *Cochise Depo., Exh. # 10, 10-11-07, p. 96:10, and Exh. # 6 – Administrative Warning Statement.*

Chris Kenny admitted that he gave a [criminal prosecution] warning to the Plaintiff, and that he learned about the warning during training that he had received as a supervisor. At his deposition, Mr. Kenny was asked "if there was anything within the Department's Discipline and Adverse Actions that require you to inform an employee that they may be subject or could be

15

subject to criminal prosecution if they gave a false statement. Mr. Kenny replied '[t]here's nothing in those regulations that require that.' Do you know of any other regulations that require it. Mr. Kenny replied 'no.'" *See, Exh. # 11, Kenny Depo., 04/30/02, p. 54:1.*

Chris Kenny gave the following testimony at his deposition:

Q.    Now, did there ever come a time when you indicated that if she gave false answers, that she could be subjected to criminal prosecution?

A.    I provided her a copy of a statement that I had obtained, in the course of taking training in Federal personnel matters, that was strongly recommended by the instructor, which makes it clear that the investigation that's being conducted, generally speaking, is of an administrative nature and that she should understand that it's of an administrative nature. But it does caution, at the end of the statement, that false answers could make a person criminally liable, and I believe that statement's part of the record.

Q.    Now, did you, at that time, when you indicated to her that it could subject you – "could"; and I believe that was the word you used, "could," not "would," but "could." Is that correct?

A.    Yes.

Q.    Did you, at that time, advise her that she had a right to counsel? Did you give her any type of rights of that nature?

A:    No, sir.

*See, Exh. # 11, Kenny Depo., 04/30/02, pgs. 43:8 – 44:12.*

Chris Kenney's oral administrative warning did not include the "Miranda Warning" that was listed at the top of the document. Plaintiff was never advised of her Miranda rights. Mr.

16

Kenny also failed to report the nature of his investigation to the Department of Interior's
Inspector General's Office. The following testimony was given by Chris Kenny in response to
questions raised at his deposition.

> Q.    Did you refer this matter to the Inspector General's Office of the Department
>        of Interior?
>
> A.    It wasn't necessary to do so.
>
> Q.    Why was it not necessary?
>
> A.    I didn't have any indication that there was any reason for me to refer anything
>        to the I.G.'s Office; nothing to my knowledge or my experience.
>
> Q.    So the reason that you gave the warning concerning the criminal prosecution –
>        subjecting possibly to criminal prosecution – was simply because it was a
>        statement that had been given in a training session?
>
> A.    And as I understand, it was a proper cautionary statement to be made in these
>        kinds of proceedings.
>
> Q.    Did you advise her that she had a right to have a representative at the
>        meeting?
>
> A.    No, I did not.

*See, Exh. # 11, Kenny depo., 04/30/02, p. 45:4 – 46:3*

The criminal prosecution warning that was given to the Plaintiff by Chris Kenny is
undisputed. The U.S. Department of the Interior – Office of the Inspector General, training
paper entitled, *"Managing the Federal Employee Discipline and Performance Process,"* includes
the "Miranda Warning" at the top of page 2-5, the same page that includes the "Administrative
Warning." *See, Exh. # 6.* However, Chris Kenny admits that he never gave the "Miranda

17

Warning." It is also undisputed that he failed to report the matter to the Inspector General's Office.

Defendant's threat of criminal prosecution was purely an act of retaliation because the underlying "investigation" was not of a criminal nature. However, the warning threat was intimating in light of Plaintiff's prior EEO activity. Moreover, the Defendant's Department Manual provides that the Office of the Inspector General (OIG) is charged with handling all allegations of fraud, waste and abuse within the Department of Interior, as well as, allegations of serious misconduct. *See Exhibit # 7*, Part *FPM Chapter 736 Investigations and Reclamation Instructions.*

Certain misconduct for which regulations provide a remedy through adverse action or proper exercise of supervision should normally be pursued by offices and bureaus. The Interior Departmental Manual, Chapter 752 – *Discipline and Adverse Actions*, also provides that the supervisor will determine what [adverse] action is warranted, and "where such evidence is not available, administrative review will be made into <u>noncriminal</u> incidents or situations as soon as possible." *See Exhibit # 8, U.S. Dept. of Interior Departmental Manual, Chapter 752.* Here, Chris Kenny not only attempted to invoke criminal sanctions without giving proper Miranda warnings, but he also sought to intimate the Plaintiff by threatening to initiate criminal prosecution, if Plaintiff was not "truthful" in her answers to his investigatory questions.

Chris Kenny also admitted that there was no basis for reporting the matter to the Inspector General's Office, and that he did advise the Plaintiff that she could be subjected to criminal prosecution, if she failed to truthfully answer his questions. There was no legitimate governmental basis for Defendant's criminal prosecution warning. Therefore, Chris Kenny's authority was limited to conducting a "noncriminal" [administrative] investigation.

The adverse employment action was taken approximately eight months after Plaintiff filed her last EEO complaint against Chris Kenny. Plaintiff's EEO complaints filed on July 3, 2000, February 29, 2000 and November 30, 1999, involved a long standing employment dispute between Plaintiff Cochise and Chris Kenny. Mr. Kenny was aware of Plaintiff's prior EEO activity, and he took numerous steps to deter Plaintiff from prosecuting her discrimination claims. The Defendant's retaliatory actions subverted the EEO process, and violated the purpose, spirit and intent of Title VII.

Wherefore, the premises considered, Plaintiff respectfully moves the Court to grant her motion for partial summary judgment on the claims of retaliation.

Respectfully submitted,

*Frazer Walton, Jr.*
Frazer Walton, Jr. #374301
920 Burns Street, S.E.
Washington, D.C. 20019
(202) 584-7572

Counsel for Plaintiff Cochise

Dated: June 5, 2008

19

rUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| RENE COCHISE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 1: 06-CV-00980 |
| | ) | (RJL) |
| DIRK KEMPTHOME, | ) | |
| Department of the Interior | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to LCvR 7, Plaintiff, Rene Cochise ("Plaintiff"), respectfully submits the following statement of material undisputed facts in support of her motion for partial summary judgment.

**A.    Rene Cochise.**

1.    Plaintiff was employed as a Policy Analyst, GS-301-13, at the Office of Native American Affairs, United States Department of Interior, when she filed three formal EEO complaints against the Defendant agency. (Cochise Affidavit ¶ 1).

**B.    The Defendant retaliated against the Plaintiff when Chris Kenny issued a Letter of Counseling to Plaintiff that disclosed the existence of the confidential settlement agreement.**

2.    In the three complaints, Plaintiff alleged that the discriminating official was her immediate supervisor, Office Director Chris Kenny. (Cochise Affidavit ¶ 2).

3.    Plaintiff and Chris Kenny participated in an EEO mediation session, and signed a confidential EEO Settlement Agreement in June 1999. (Cochise Affidavit ¶ 3; Cochise Ex. # 1, Confidential EEO Settlement Agreement).

4.      Plaintiff contacted an EEO counselor on November 30, 1999, and complained about her supervisor's continuing discriminatory conduct. (Cochise Affidavit ¶ 4; Ex. # 2, EEO Counseling Report).

5.      On December 10, 1999, Chris Kenny issued a Letter of Counseling to the Plaintiff that included information contained in the confidential settlement agreement that was signed by Kenny and Cochise. The letter was also placed in Plaintiff's personnel file. (Complaint ¶¶ 29-30, Cochise Affidavit ¶ 4; Cochise Ex. # 3).

6.      At Plaintiff's Deposition, the parties agreed that the settlement agreement was confidential. (Cochise Dep. 88:16-25; Cochise Affidavit ¶ 6).

**C.      Plaintiff was not given access to important and time sensitive information which prevented her from fulfilling her duties as acting director.**

7.      Plaintiff was appointed Acting Director of the Office of Native America Affairs on March 28, 2000, and she was not given access to important and time sensitive information that was locked in the Director's office. As a result, Plaintiff was unable to give a timely response to legislation pending before the U.S. Congress. (Cochise Affidavit, ¶ 7; Cochise Dep. dated 9/18/07, p. 134:12 – 136:18; Complaint ¶ 37).

8.      Chris Kenny admitted that while he was absent from the office, the Plaintiff was unable to access important and sensitive information locked in his office, and she was unable to respond to legislation. (Kenny Dep. dated 04/30/02, 32:4 – 33:19).

9.      Plaintiff had previously contacted an EEO counselor on February 29, 2000 and April 25, 2000. (Ex. # 4, ROI – 5-2d, p. 1).

**D.    Chris Kenny tried to jerk a package out of the Plaintiff's hand and he pried her hand from the package.**

10.    On April 28, 2000, Chris Kenny held Plaintiff's wrist, and pried a voucher out of her hand. (Complaint ¶ 42; Cochise Dep. dated 10/17/07, pgs. 78-79).

11.    Agency official, Margaret Sibley, relocated Plaintiff to the Office of Policy after the altercation was reported to the front office. (Cochise Dep. dated, 10/11/07, pgs. 129:17 – 130:21; Cochise Affidavit ¶ 11).

12.    Chris Kenny stated that he jerked the package from Plaintiff and pried off a couple fingers to loosen her hand.  (Kenny dep. dated 04/30/02, pgs. 94:9 – 97:2).

13.    Plaintiff had previously contacted an EEO Counselor on February 29, 2000, and April 25, 2000.  (Ex. # 4, ROI - 5-2d, p. 1).

**E.    During an administrative investigation, Plaintiff was warned that she could be Subjected to criminal prosecution, if she gave false answers.**

14.    On April 28, 2000, Chris Kenny conducted an "administration investigation" into Plaintiff's alleged misconduct, and he advised her that she could be subjected to criminal prosecution if she gave any false answers to his questions.  (Complaint ¶ 44-45; Cochise Dep. dated 10/11/07, p. 96:10; Cochise Affidavit ¶ 13).

15.    Chris Kenny admitted that he conducted an administrative investigation of the Plaintiff, and that he warned Plaintiff that she could be subjected to criminal prosecution, if she gave false answers to his questions. (Kenny Dep. dated 04/30/02, pgs. 43:8 – 44:12).

16.    Plaintiff had previously contacted an EEO counselor on February 29, 2000, and April 25, 2000.  (Ex. # 4, ROI 5-2d, p. 1).

3

Respectfully submitted,


*Frazer Walton, Jr.*
Frazer Walton, Jr. #374301
920 Burns Street, S.E.
Washington, D.C. 20019
(202) 584-7572

Counsel for Plaintiff Cochise

4