## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RENE COCHISE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil No. 06-CV-00980 (RJL) |
| | : | |
| DIRK KEMPTHORNE, Secretary, | : | |
| UNITED STATES DEPARTMENT OF | : | |
| THE INTERIOR, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Dirk Kempthorne, Secretary of the United States Department of the Interior, by and through undersigned counsel, hereby moves for summary judgment. The Department of the Interior is entitled to summary judgment as a matter of law because: (1) Plaintiff cannot establish that officials at the Department of the Interior created a hostile work environment; (2) Plaintiff cannot prove a prima facie case for her retaliation claims, and, even if she could, she is unable to establish that the reasons that the Department of the Interior provided for its actions were pretextual; and (3) Plaintiff cannot establish a prima facie case for her disparate treatment claims, and, even if she could, she is unable to establish that the reasons the Department of the Interior provided for its actions were pretextual. A statement of undisputed facts and a memorandum of points and authorities in support of this motion are attached.

DATED this 6th day of June 2008.

Respectfully,


  /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney



  /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney



  /s/
CHRISTIAN A. NATIELLO, D.C. Bar #473960
Assistant United States Attorney
555 4th St., N.W.
Room E4112
Washington, D.C. 20530
(202) 307-0338

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RENE COCHISE,                       :
                                    :
              Plaintiff,            :
                                    :
       vs.                          :        Civil No. 06-CV-00980 (RJL)
                                    :
DIRK KEMPTHORNE, Secretary,         :
UNITED STATES DEPARTMENT OF         :
THE INTERIOR,                       :
                                    :
              Defendant.            :

## STATEMENT OF UNDISPUTED FACTS

1.     Plaintiff began working for the Department of the Interior "(DOI") in 1990 as a Program Specialist with the Bureau of Indian Affairs (BIA), Office of Trust Responsibility, Division of Natural Resources, Branch of Irrigation, Power, Safety and Dams. Cochise Dep., Sept. 18, 2007, 29:1-13, attached hereto as Exhibit A.

2.     After the BIA began reducing its workforce in 1996, Plaintiff accepted a position with the DOI's Bureau of Reclamation. Id. at 36:10-16, attached hereto as Exhibit B.

3.     In August of 1997, Plaintiff transferred into a Policy Analyst position in the Bureau's Native American Affairs Program. At that time Chris Kenney became Plaintiff's first-line supervisor. Id. at 37: 6-10, attached hereto as Exhibit B.

4.      After joining the Native American Affairs Program Office (NAAO), Plaintiff almost immediately began attending workshops, training and conferences and participating in meetings and

working groups.  ROI ("Report of Investigation") Exh. No. 5-1, vol. 2, p. 8-12 of 34, attached hereto as Exhibit C.

5.      On November 14, 2007, Mr. Kenney informed Plaintiff that she was perceived as being disruptive by others at a training session she attended on November 12-13, 1997.  Plaintiff viewed this interaction as evidence of discrimination and/or an element contributing to a hostile work environment.  Exhibit C, ROI Exh. No. 5-1, vol. 2, p. 9 of 34.

6.      On March 3, 1998, Mr. Kenney asked Plaintiff not to solicit travel funding from Indian tribes.  Plaintiff considered this interaction to be evidence of discrimination and/or an element contributing to a hostile work environment.  Exhibit C, ROI Exh. No. 5-1, vol. 2, p. 10.

7.      On March 12, 1998, Plaintiff arrived 45 minutes late to a scheduled meeting.  Plaintiff felt that Mr. Kenney was bothered by her late arrival and viewed this as evidence of discrimination and/or an element contributing to a hostile work environment.  Exhibit C, ROI Exh. No. 5-1, vol. 2, p. 10-11.

8.      On January 8, 1999, members of the NAAO office attended an Indian O&M working group meeting in Salt Lake City, Utah.  Plaintiff has indicated that at a break in the meeting she informed her supervisor Mr. Kenney that she viewed his referring to the three Regional Directors as the "Three Amigos," translated as "three friends," as unprofessional and derogatory.  Exhibit C, ROI Exh. No. 5-1, vol. 2, p.12.   Plaintiff openly criticized her supervisor and coworkers like this numerous times from 1997 to 2000 and felt that it was justified because she viewed it as demonstrating "independent thinking."  Exhibit C, ROI Exh. No. 5-1, vol. 2, p. 8-18.

9.      On April 8, 1999, Plaintiff sought out EEO counseling and requested mediation to resolve the issues she felt existed between her and Mr. Kenney.   Exhibit C, ROI Exh. No. 5-1, vol. 2, p. 13.

10.    Mr. Kenney and Plaintiff met with a mediator on June 2 and 3, 1999, to attempt to address the issues.  The parties reached an agreement as a result of the mediation.  In that agreement, the parties agreed to talk to each other when either perceived something the other did as offensive.  ROI Exh. No. 2-1A, vol. 1, p. 1 of 4, attached hereto as Exhibit D.   The criteria that could potentially be used to evaluate Plaintiff's progress toward promotion to a GS-14 pay grade was another topic discussed at the mediation.  ROI Exh. No. 6, vol. 3, p. 7 of 13, attached hereto as Exhibit E.

11.      During the mediation, Mr. Kenney also raised concerns about the difficulty he was having with Plaintiff's conduct in the office at the time and reports he was receiving from other employees regarding conflicts they were having with Plaintiff.  ROI Exh. No. 6-1, vol. 3, p. 1 of 4, attached hereto as Exhibit F.

12.      Mr. Kenney assigned Plaintiff a number of projects while she was with the NAAO. Exhibit E, ROI Exh. No. 6, vol. 3, p. 5-8 of 13.

13.      One of those assignments was to provide support to the Water Rights Office in the work it was doing on the Federal Funding Task Force.  In that role, Plaintiff was working with Ms. Heather Sibbinson.  Approximately two months into the project, Plaintiff informed Mr. Kenney that the Water Rights Office had requested that she no longer be assigned to the project.   Id. at p. 6

14.      Plaintiff and Ms. Sibbinson provided different accounts of what led to Plaintiff ending her work on the project.  Id.

3

15.    Plaintiff was later given responsibility for supporting Ms. Roseann Gonzales and her staff with the Bureau of Reclamation's Drought Program.  During this project, Mr. Kenney met with Plaintiff to discuss negative reports he was receiving regarding Plaintiff's performance.   In discussing the issues, Plaintiff indicated that she felt the problems stemmed from Ms. Gonzales' failure to provide adequate leadership.  Id.

16.     In November of 1999, the staff from NAAO took a trip to Albuquerque, New Mexico.  The NAAO policy regarding rental cars was that employees were required to rent compact cars unless they could provide justification for renting something bigger.  Plaintiff rented a larger car on that trip.  ROI Exh. No. 7-4, vol. 3, p. 2, attached hereto as Exhibit G.  On November 24, 1999, Ms. Barbara White was acting as Director of the office at the time Plaintiff submitted her travel voucher from the New Mexico trip.  When Ms. White asked Plaintiff to include a justification for renting a larger vehicle, the conversation quickly deteriorated into a verbal confrontation.  Id. Plaintiff ultimately provided justification on November 26, 1999, but did so in a manner that created greater tension between her and Ms. White.  Id. at p. 4.

17.    On December 10, 1999, Mr. Kenney issued Plaintiff a "Memorandum of Counseling," which encouraged Plaintiff to improve her behavior and act more professionally toward her fellow employees.  The memorandum also outlined a number of problems Mr. Kenney was having with the way that Plaintiff would arrange meetings with outside parties and/or schedule or alter her travel plans without providing him or the acting director with notice.  Exhibit F, ROI Exh. No. 6-1, p. 1-2.

18.     On March 6, 2000, Plaintiff was asked to help Ms. Lynne Davis with developing a bureau-wide database of Indian affairs related data.  The two were to work as a team, with Ms. Davis providing the technical expertise related to database development and Plaintiff providing insight on policy and Bureau of Reclamation related issues.  Mr. Kenney also requested that the team provide him a "white paper" which would lay out how the project would be approached, realistic timelines for its implementation, and the responsibilities for each team member.  Ms. Davis and Plaintiff submitted a draft in April of 2000.  Plaintiff viewed Mr. Kenney's response to questions posed to him by Ms. Davis regarding his thoughts on the paper as evidence of discrimination.  Complaint; Exhibit E, ROI Exh. No. 6, p. 7-8.

19.     On March 9, 2000, Mr. Kenney reminded Plaintiff that he, as the individual ultimately responsible for the representations made by his office, needed to be made aware of meetings scheduled between the NAAO, Indian tribes, and/or third parties acting on their behalf.  Mr. Kenney previously raised this issue with Plaintiff in April of 1999, when it was reported to Mr. Kenney by Ms. Betty Johnson that Plaintiff had scheduled a meeting with representatives of the Jicarilla Tribe without his knowledge.  Exhibit E, ROI Exh. No. 6, p. 8 of 13; ROI, Exh. No. 6-3, p. 1-4, attached hereto as Exhibit H.

20.     On March 21, 2000, Plaintiff was asked to answer a Congressional inquiry about whether the Bureau of Reclamation could provide a total dollar figure for fiscal year 2001 with respect to the Indian Water Settlements it was participating in under the Native American Affairs Program.  Plaintiff drafted a response memorandum and circulated it for review.  Ms. Barbabra White, acting as Director, recommended that changes be made to the format of the response by

Plaintiff before the document was forwarded on.  ROI Exh. No. 6-6, vol. 3, p. 1, attached hereto as Exhibit I; ROI Exh. No. 6-6, vol. 3, p. 41 of 61, attached hereto as Exhibit J.

21.     On March 22, 2000, Plaintiff still had not made the changes, yet she asked Ms. Perfilia Madalena to finalize the draft for the acting director's signature and did not inform Mr. Kenney of the need to make changes when she spoke with him on the phone.  Ms. White sent Plaintiff emails that day reminding her to make the changes.  Plaintiff opened Ms. White's last email at 12:45 pm.  Ms. White later reported to Mr. Kenney that, despite Ms. White's requests, Plaintiff sent the document to the legislative staff without making the requested changes.  She also indicated that at approximately 2:00 pm, Plaintiff then left the office on travel to Portland, Oregon, without informing Ms. White that she would not be in the rest of the week.  Id.

22.     On April 14, 2000, Mr. Kenney attempted to schedule a meeting with Plaintiff to discuss the incident.  He requested that Ms. Betty Johnson be present as an objective third party. Plaintiff objected to the presence of Ms. Johnson and requested that an EEO counselor or Larry Todd,  Director of Operations for the Bureau of Reclamation be present instead.  It soon became clear that the two would be unable to reach an agreement on conditions for a meeting, so the meeting never occurred.  Exhibit E, at p. 9.

23.     On April 25, 2000, Mr. Kenney revoked Plaintiff's open travel authorization due to the problems he was having with her failing to make him and/or acting supervisors aware of her travel plans and/or changes to her itinerary.  Id.

24.     On April 28, 2000, Mr. Kenney issued Plaintiff a "Letter of Reprimand," for failing to follow instructions on March 21-22, 2000.  Exhibit I; Exhibit E, at p. 10.

25.     On April 28, 2000, Plaintiff submitted a voucher seeking to be reimbursed for travel. The voucher she submitted requested reimbursement of lodging rate that exceeded the published federal rates for the Phoenix, Arizona area.  Exhibit E, p. 11.  Plaintiff originally had a reservation at a hotel that charged an approved rate, but changed her reservation.  Mr. Kenney refused to approve Plaintiff's voucher as a result.  Id.

26.     Assuming that his secretary had made a copy of the original voucher, Mr. Kenney returned the travel voucher package to Plaintiff.  When Mr. Kenney learned that a copy had not been made, he went to Plaintiff's office to ask her for the documents back so that a copy could be made. Id.  When Mr. Kenney entered Plaintiff's office, she was sitting with her back to the door and the voucher was sitting on her desk.  Mr. Kenney reached down and grasped the voucher, informing Plaintiff that he was taking it at the same time.  Plaintiff turned around and grabbed hold of the documents, informing him that she could make a copy.  The two continued to struggle over the document and Mr. Kenney eventually used his hand to remove Plaintiff's fingers from the document. A copy was made and Plaintiff later submitted an adjusted travel voucher that was approved.  Id.

27.     Plaintiff filed two formal EEO complaints in 2000, one on February 29, 2000, and a second one around July 6, 2000.  In both complaints, Plaintiff alleged that a hostile work environment had been created and that she was being discriminated against because of her race and prior EEO activity.  ROI Exh. No. 1-1, vol. 1, p. 1-6, attached hereto as Exhibit K.

28.     Plaintiff later  filed a  third formal complaint of discrimination on April 24, 2001. In that complaint, she reiterated her prior allegations and also alleged that she was discriminated against based upon her race and reprisal and subjected to a hostile work environment, when on

March 15, 2001, she had a meeting with Christopher Kenney, during which he disclosed that he was conducting an administrative investigation into her misconduct for failure to follow his stated instructions and that if she gave any false answers to his questions that she could be subjected to criminal prosecution, and proposed a three-day suspension for her failure to follow his instructions.

29.     The three cases were consolidated and on January 13, 14, February 16, and March 4, 2004, an administrative hearing was held before an Administrative Judge (AJ) from the Equal Employment Opportunity Commission (EEOC).   The AJ issued his written decision on March 23, 2004.  In his written decision, the AJ concluded that Plaintiff had not established by a preponderance of the evidence that the agency subjected her to discrimination based on her national origin, or retaliated against her for her prior EEO activity.  Administrative Judge's Order, p. 8, attached hereto as Exhibit L.

30.     The AJ also concluded, based on the evidence he heard,  that Plaintiff "was a disruptive and insubordinate employee who generally acted as if she knew better than anyone else how her job should be done."  In addition, he observed that "her actions suggest she conducted herself as if only she knew how her office should conduct its business."  Exhibit L, at p. 5.

31.     On June 15, 2004, Plaintiff appealed the AJ's decision to the EEOC's Office of Federal Operations (OFO).  In the brief she submitted in support of her appeal, Ms Cochise only disputed the AJ's findings with respect to her not being promoted.  The OFO  issued an order upholding the AJ's decision and issued Plaintiff a notice of her right to file a civil action on March 3, 2006.  Complaint, at p. 2.

32.     Plaintiff filed a complaint with the United States District Court for the District of

Columbia on May 26, 2006.  Id., at p.1.


DATED this 6th day of June 2008.

Respectfully,


    /s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney



    /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney



    /s/
CHRISTIAN A. NATIELLO, D.C. Bar #473960
Assistant United States Attorney
555 4th St., N.W.
Room E4112
Washington, D.C. 20530
(202) 307-0338

9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RENE COCHISE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil No. 06-CV-00980 (RJL) |
| | : | |
| DIRK KEMPTHORNE, Secretary, | : | |
| UNITED STATES DEPARTMENT OF | : | |
| THE INTERIOR, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Dirk Kempthorne, Secretary of the United States Department of the Interior ("DOI"),
hereby submits the following memorandum in support of his Motion for Summary Judgment.
As shown below, the facts in this matter are undisputed and the DOI is entitled to summary
judgment as a matter of law because: (1) Plaintiff cannot establish that officials at the DOI
created a hostile work environment, (2) Plaintiff cannot prove a prima facie case for her
retaliation claims, and, even if she could, she is unable to establish that the reasons that the DOI
provided for its actions were pretextual, and (3) Plaintiff cannot establish a prima facie case for
her disparate treatment claims, and, even if she could, she is unable to establish that the reasons
the DOI provided for its actions were pretextual.  Consequently, this Court should grant the
Defendant's Motion for Summary Judgment.

## LEGAL STANDARD OF REVIEW

The standard for summary judgment under Fed.R.Civ.P. 56 is that summary judgment "'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Laurent v. Bureau of Rehabilitation, Inc., 2008 U.S. Dist. LEXIS 30100, *6 (D.D.C.), citing Fed. R. Civ. P. 56(c); Celotex Corp.v. Catrett, 477 U.S. 327, 322-24, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). "In deciding whether there is an issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. Laurent, LEXIS 30100 at *6, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Where the Court finds that facts material to the outcome of the case are at issue, a case may not disposed of by summary judgment. Laurent, LEXIS 30100 at *6, citing Anderson, at 248; also see MacMillan v. Powell, 526 F.Supp.2d 51, 54 (D.D.C. 2007).

## ARGUMENT

**I.     PLAINTIFF CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT.**

This lawsuit presents the Court with a case of a difficult employee who complains about a list of events that occurred to her while employed at the Department of the Interior. The problem for Plaintiff is that her list is devoid of any discriminatory animus. Moreover, the list includes actions taken by the agency that are objectively reasonable and justifiable. The list, even taken as fact, falls far short of evidence of a hostile work environment.

This case was litigated at the administrative level before the Equal Employment Opportunity Commission ("EEOC").  In the arguments Plaintiff made before the EEOC, Plaintiff presented a number of theories under which she argued that she had been discriminated against based on her race and because of her prior EEO activity.  The EEOC administrative judge accepted and heard arguments on the following allegations and issues:

A.    Whether Plaintiff was discriminated against on December 10, 1999, when she was issued a Letter of Counseling;

B.    Whether Plaintiff was subjected to a hostile work environment when:

   1.    she was not promoted to Policy Analyst, GS-3-1-14 before April 28, 2000;

   2.    on March 6, 2000, she was assigned to write a white paper on a database being developed  and upon completion of the assignment, her supervisor criticized the work-product during a conversation he had with another employee working on the project;

   3.    on March 9, 2000, she was reminded that she needed to discuss any meetings she planned to have Indian tribes with Mr. Kenney, her supervisor;

   4.    on March 28, 2000, all correspondence was not provided to her while she was acting as Director and was placed in Mr. Kenney's locked office;

   5.    on April 14, 2000, Mr. Kenney requested a meeting with her to discuss her behavior on March 21-22, 2000, and denied her request to have either an EEO counselor or the Director of Operations for the Bureau of Reclamation present;

   6.    on April 25, 2000, her open travel authorization was suspended;

   7.    on April 18, 2000, she was issued a letter of reprimand for her behavior on March 21-22, 2000;

   8.    on April 28, 2000, her travel voucher was denied and Mr. Kenney removed Plaintiff's hand from the travel voucher they were struggling over; and

9.      Mr. Kenney limited the amount of time Plaintiff had to complete projects, did not assign her the kind of assignments and responsibilities she felt she was entitled to, and did not insure that she had access to information she felt she needed to complete time sensitive projects.

10.     on March 15, 2001, she had a meeting with Mr. Kenney where he indicated that he was conducting an administrative investigation into her misconduct for failure to follow instructions and warned her that if she gave any false answers to his questions that she could be subjected to criminal sanctions.

11.     Mr. Kenney proposed a three-day suspension based on that investigation;

12.     at some point between May 2, 2002 and July 31, 2003, Ms. Perfilia Madalena or some other person moved a framed certificate of appreciation that Plaintiff had received.

See EEOC AJ's March 23, 2004 Decision, attached as Exhibit L.

Despite the multiple allegations presented in her Complaint, "[t]he real thrust of [Plaintiff]'s discrimination claim [is] that she was subjected to harassing actions that amounted to a hostile work environment." Bryant v. Brownlee, 265 F.Supp. 2d 52, 62-65 (D.D.C. 2003). To survive a defendant's motion for summary judgment, a plaintiff claiming hostile work environment must at least establish a prima facie case. To establish a prima facie hostile work environment claim, a plaintiff must demonstrate that he/she:

(1) is a member of a protected class; (2) was subjected to unwelcome harassment; (3) the harassment occurred because of his/her race [or protected class status]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it.

Kelley v. Billington, 370 F. Supp. 2d 151, 156-57 (D.D.C. 2005). In making her claim, Plaintiff points to numerous incidents she characterizes as unjust adverse employment actions and other events she simply views as discriminatory. However, as was the case in Bryant v. Brownlee,

4

"[d]espite the sheer number of incidents of which [Plaintiff] complains, her claim of a

discriminatory hostile work environment contains at least one glaring defect: none of the

allegations give rise to an inference of discrimination by [the] defendant [Agency] based on

race." Id. at 62-63 (granting agency's motion for summary judgment).  As will be discussed in

detail below, Plaintiff's complaint has other weaknesses as well, in that she also fails to

demonstrate that her workplace environment was permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of her

employment and create an abusive working environment.  See Faragher v. Boca Raton, 524 U.S.

775, 787-88, 118 S.Ct 2275 (1998); Oncole v. Sundowner Offshore Servs., Inc., 510 U.S.. 75,

81, 118 S.Ct. 998 (1998).

      A.     Plaintiff has failed to connect the agency action about which she complains to her
             protected status

The courts of this Circuit have consistently held that, given the fact that every employee

"can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses

are harsh . . .  and rude," plaintiffs must present evidence linking the incidents complained of to

their protected status.  Bryant v. Brownlee, 265 F.Supp. 2d 52, 62-65 (D.D.C. 2003) (quoting

Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2nd Cir 1999 )); Silver v.

Leavitt, 2006 U.S. Dist. LEXIS 12949 (D.D.C. 2006); Kelley, et al v. Billington, 370 F.Supp 2d

151, 156-157.  "Otherwise, the federal courts will become a court of personnel appeals." Alfano

v. Costello, 294 F.3d 365, 377 (2nd Cir. 2002).

Merely describing unpleasantness in the office, a supervisor's dislike of an employee's

personality or the fact that a supervisor may have better relationships with the plaintiff's

coworkers is simply not enough to survive a motion for summary judgment.  See Bryant v.

Brownlee, 265 F.Supp. 2d at 64; Jones v. Billington, 12 F.Supp 2d 1, 12 (D.D.C. 1997) (hostile

work environment claim failed where plaintiff had not demonstrated that any of the conduct of

which he complains was related to his race, or that his workplace was permeated with racially

discriminatory behavior).

      Like the plaintiff in Bryant v. Brownlee, Plaintiff merely provides a list of the incidents

that occurred during her employment with the agency that she was displeased with and labels

them as discriminatory.  See Complaint, at pp. 4-13; EEOC AJ's March 23, 2004 Decision,

attached as Exhibit L.  She completely fails to link the actions to her protected status.  Cochise

Complaint, p. 4-12.  Importantly, not one of these incidents are racial on their face...or even

behind their face.  They are all completely race neutral.  For instance, other than mentioning that

she viewed *herself* as the only Native American "professional" on staff,[1] she does not reference

one incident in which her race was directly at issue.   Nor does she tie instances where she was

warned, reprimanded, criticized, etc. to her race in any way.  As a result, the allegations raised

by Plaintiff fall far short of establishing a hostile work environment under the exacting standard

used by the courts.  See Burton v. Batista, 339 339 F. Supp. 2d 97, 108 (D.D.C. 2004) (granting

defendant agency's motion for summary judgment); Bryant v. Brownlee, 265 F.Supp. 2d at 64-

65.

---

[1] Contrary to Plaintiff's assertion, she was not the only Native American working in Mr. Kenney's office.

"Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were in fact based on [the protected status]." Alfano, 294 F.3d at 377-78.  However, relied upon in isolation, they are rarely enough to survive a motion for summary judgment.  Id.

To allow Plaintiff's claims to survive summary judgment, this Court would be forced to assume race was at issue.  The Court would be forced to equate personal conflict with discriminatory animus.  This is something courts have consistently refused to do.  See Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000) (explaining that personal conflict does not equate with discriminatory conduct); Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 315 (S.D.N.Y. 2000) (dismissing hostile work environment claim where hostile work environment plaintiffs reflected a clash of personality rather than discriminatory animus).

The prospect of a court doing so in this case is even more troubling because Plaintiff repeatedly directly contradicts her claim that her race is what motivated her supervisor's actions by providing alternative explanations herself.  Exhibit C.  For instance, Plaintiff undermines her race claim by also claiming that she was reprimanded, criticized or treated differently because she demonstrated independent thinking, was less popular than Ms. White, resisted recommendations made by team members, or chose not to interact or socialize with her coworkers, etc.  Id.  Given this,  summary judgment must be granted due to Plaintiff's failure to connect the incidents of which she complains to her protected status.  Bryant v Brownlee, 265 F.Supp. 2d at 64.

     B.     Plaintiff cannot establish that offensive conduct permeated her workplace with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive enough as to alter the conditions of her employment and create an <u>abusive working environment</u>

The key to determining whether a work environment has become sufficiently "hostile" to justify a cause of action under Title VII  is to look at how severe, pervasive, and abusive the actions complained of are because "not just any offensive or discriminatory conduct rises to an actionable hostile work environment."  <u>Burton v. Batista</u>, 339 F. Supp. 2d 97, 106-107 (D.D.C. 2004) (granting defendant agency's motion for summary judgment).  To determine whether a workplace is sufficiently hostile to be actionable under the law, a court should consider:

> (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonable interferes with employees performance.

<u>Id</u>. at 107.  Courts have explained that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Properly applied, [they] will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  <u>Id</u>.; <u>Stewart v. Evans</u>,  275 F.3d 1126, 1134 (D.C. Cir. 2002) (explaining that even a few isolated incidents of offensive conduct do not amount to actionable harassment); <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2nd Cir. 2002).

Mr. Kenney and Ms. White's treatment of Plaintiff, objectively, cannot be characterized as "severe, " "pervasive" and  "abusive" under the law.  The approximately fifteen different instances Plaintiff specifically discusses in her complaint occurred over a seven-year period from 1997 to 2004.  <u>See</u> Cochise Complaint; Undisputed Facts.  Plaintiff has not argued that issues

8

related to race were regularly raised or discussed by Mr. Kenney or other NAAO staff.  Nor has she effectively demonstrated that the instances where Mr. Kenney or other NAOO staff members corrected or counseled her occurred "frequently."  In fact, an objective reading of the record could easily lead one to conclude that Plaintiff criticized, counseled or ridiculed her coworkers much more frequently than they did her.  Exhibit C.

It would also be extremely difficult to characterize Mr. Kenney and Ms. White's interactions with Plaintiff as severe or abusive under applicable legal standards.  As indicated above, the incidents were race-neutral and were almost always directly connected to action or inaction on the part of Plaintiff.  Plaintiff simply has not alleged that profanity or racial epithets were used or that she was publically humiliated.  See Complaint, p. 4-12; See Burton v. Batista, 339 F.Supp 2d at 111 (explaining that absent any facially discriminatory remarks, exposure to yelling from a supervisor is  not an actionable adverse action because discrimination laws do not guarantee a stress-free work environment).  "In this Circuit and others, hostile work environment claims have been dismissed for insufficiency of evidence even though, compared to what was adduced here, they involved [1] a similar or greater number of instances, [2] that were compressed in time, and [3] that were more severe and had more pronounced discriminatory overtones."  Alfano v. Costello, 294 F.3d at 379-380 (citing over ten cases where conduct that would generally be considered offensive was not severe or abusive enough to justify finding that a hostile work environment existed); Stewart v. Evans, 275 F.3d 1126, 1133-1134 (D.C. Cir. 2002); Celestine v. Petrolos de Venezuella SA, 266 F.3d 343, 354 (5th Cir. 2001) (finding that eight incidents of alleged racial harassment over a twenty-five month period was insufficient).

In reaching the conclusion that the plaintiffs in these cases failed to provide a sufficient amount of evidence that a hostile work environment existed, the courts acknowledged that "many personnel decisions can be ascribed to discrimination no matter what the supervisor does," and that courts must take care to ensure that ordinary interactions are not simply grouped together and packaged as evidence of discrimination.  <u>Alfano</u>, 294 F.3d at 377.  Given this and the fact the incidents Plaintiff complains of are far less offensive than those that courts have consistently found to be insufficient as a matter of law, the law requires a finding that Plaintiff has failed to establish a claim of hostile work environment.

## II.    PLAINTIFF CANNOT ESTABLISH THAT DOI OFFICIALS RETALIATED AGAINST HER DUE TO HER PRIOR EEO ACTIVITY

Plaintiff relies on the same set of facts in making her claim of retaliation as she did in her hostile work environment claim.  <u>See</u> Complaint, p. 8-12.  "To make out a prima facie claim of retaliation, [Plaintiff] must establish that: (1) [s]he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a casual connection existed between the two."  <u>Burton v. Batista</u>, 339 F. Supp 2d 97, 105 (D.D.C. 2004) (citing <u>Brown v. Brody</u>, 199 F.3d 446, 452 (D.C. Cir 1999)).

A.    Plaintiff cannot establish that a legally cognizable adverse employment action was<u> taken against her</u>

"In determining whether a challenged action constitutes an adverse employment action, a court should focus on 'ultimate employment decisions' such as 'hiring, granting leave, discharging, promoting, and compensating,' not intermediate decisions that have no immediate effect upon employment decisions."  <u>Burton</u>, 339 F. Supp 2d at 110.  While the law certainly

10

does not require that an employee be discharged or demoted to establish that a legally recognized adverse action has been taken against him or her, plaintiffs generally must show that "materially adverse consequences affecting the terms, conditions, or privileges of employment," has occurred.  Id.

Plaintiff primarily lists incidents like: (1) receiving formal criticism from Mr. Kenney, including a letter of counseling and a letter of reprimand; (2) receiving less than what she would have considered desirable performance evaluations; (3) having her open travel authorization rescinded; (4) being reminded/required to discuss plans to meet with Indian tribes or other third parties or an acting director; and (5) not being provided with access to documents in Mr. Kenney's office while acting for herself on one occasion as evidence that she was being retaliated against.

"The D.C. Circuit has noted that formal criticism or poor performance evaluations are generally not adverse employment actions if they do not affect the employee's grade or salary." Id. at 110-111.  This is because employers are permitted to criticize an employee's performance or behavior in the workplace without giving rise to a federal cause of action.  See id. at 111 (citing Weigert v. Gerogetown Univ., 120 F.Supp. 2d 1, 17 (D.D.C. 2000)).  Outside of her claim that she was not promoted to GS-14, Plaintiff finds herself in the same position as the plaintiff in Burton, in that "she has not established or even alleged any tangible adverse consequences affecting the terms and conditions of her employment."  Id.  The vast majority of her retaliation claims must be dismissed as a result.  Bryant v. Brownlee, 265 F.Supp 2d at 66.

11

B.    Plaintiff cannot establish a casual connection between not being promoted to GS-14 and her prior EEO activity, nor can she adequately rebut the nondiscriminatory <u>reason the agency has proffered</u>

While a supervisor's decision not to promote an employee may generally be considered an actionable adverse employment action, the plaintiff in a Title VII case still bears the burden of establishing that the fact that she was not promoted is causally connected to her prior EEO activity.  <u>Burton v. Batista</u>, 339 F. Supp 2d at 110-111.  Establishing that an employee was subjected to a legally recognized adverse action does not guarantee that her claim survives summary judgment.  <u>Brown v. Brody</u>, 199 F.3d 446, 458 (D.C. Cir. 1999).  In fact, if the plaintiff fails to establish a causal connection between the adverse action and the prior EEO activity or fails to adequately rebut the nondiscriminatory reason provided by the agency, summary judgment should be granted.  <u>Id</u>.

In this case, Mr. Kenney gave Plaintiff a number of assignments while she was under his supervision.  He monitored her progress on those assignments to evaluate whether she was prepared for a promotion to GS-14.  Exhibit E.  Of the four major assignments Mr. Kenney assigned Plaintiff, he found that she had problems completing the project in a timely manner or that she had difficulty working with other individuals assigned to work with her in all four circumstances.  <u>Id</u>.  Plaintiff has not provided any evidence other than her own conclusory assertions to rebut this explanation.

 "As courts are not free to second-guess an employer's business judgment,' a plaintiffs mere speculations are 'insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment."  <u>Brown</u>, 199 F.3d at 458-

459.  Like the plaintiff in <u>Brown</u>, Plaintiff provides a number of theories to rebut the explanation

provided by Mr. Kenney.  Theories alone, however, are not enough and, absent more, the motion

for summary judgment must be granted.  <u>Id</u>. at 459.

## III.    PLAINTIFF CANNOT ESTABLISH THAT SHE WAS TREATED DISPARATELY DUE TO HER RACE

In alleging disparate treatment, Plaintiff primarily relies on the same facts that she did in

making her hostile work environment and retaliation claims.  In doing so, she duplicates the

errors that plague her other claims.  <u>See</u> Complaint.  Disparate treatment and retaliation claims

share similar elements that must be satisfied to avoid summary judgment under Title VII.  <u>Brown</u>,

199 F.3d at 452-53.  Both require that the employee establish that he or she has been subjected to

a legally cognizable adverse action and that a connection is drawn between either the plaintiff's

protected status or protected activity.  <u>Id</u>.  Under the disparate treatment analysis used by courts,

the plaintiff must establish that "(1) she is a member of a protected class; (2) she has suffered an

adverse employment action; and (3) the unfavorable action gives rise to an inference of

discrimination." <u>Id</u>.  With regard to her disparate treatment claim, Plaintiff is unable to establish

that she was subjected to a legally cognizable adverse action for the very same reasons she was

unable to do so with regard to her retaliation claim.  <u>See</u> Brief Section II. A.

In making  her disparate treatment claim, Plaintiff places greater emphasis on the fact that

she was reminded or required to keep Mr. Kenney aware of the meetings she was having with

Indian tribes or other third parties.  <u>See</u> Cochise Complaint, p 12-13.  However, being required to

discuss sensitive meetings such as those involving Indian tribes, with whom the DOI has a trust

relationship, is not an adverse action under the law.  <u>Burton v. Batista</u>, 339 F. Supp 2d at 110.  As

13

explained above, "[t]he D.C. Circuit has noted that formal criticism or poor performance evaluations are generally not adverse employment actions if they do not affect the employee's grade or salary." Id. at 110-111. Accordingly, summary judgment should be granted with regard to Plaintiff's disparate treatment claims.

**CONCLUSION**

For the foregoing reasons, this Court should grant the DOI's Motion for Summary Judgment on the remaining claims in this action.

14

DATED this 6th day of June 2008.     Respectfully,


   /s/

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney



   /s/

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney



   /s/

CHRISTIAN A. NATIELLO, D.C. Bar #473960
Assistant United States Attorney
555 4th St., N.W.
Room E4112
Washington, D.C. 20530
(202) 307-0338