UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| RENE COCHISE )<br><br>Plaintiff, )<br><br>v. )<br><br>DIRK KEMPTHOME, Secretary, )<br>Department of the Interior, )<br><br>Defendant. ) | Civil Action No. 1: 06-CV-00980<br>(RJL) |

## PLAINTIFF'S RENE COCHISE'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Rene Cochise hereby opposes Defendant's motion for summary judgment based on the grounds that there are genuine issues of material fact to be decided by the trier of fact, and that the Defendant is not entitled to judgment as a matter of law. Therefore, Defendant's motion should be denied.

Attached hereto are Plaintiff's Memorandum of Points and Authorities in support of her opposition, the Statement of Mterial Facts As To Which Exist Genuine Issues In Dispute, and accompanying Exhibits, Affidavits and a Declaration.

Respectfully submitted,


*Frazer Walton, Jr.*
Frazer Walton, Jr. #374301
920 Burns Street, S.E.
Washington, D.C. 20019
(202) 396-7653

Counsel for Plaintiff Cochise


## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2008, a copy of the foregoing opposition and

accompanying documents were filed Electronically through the Court's Electronic ECF

system.


By: *Frazer Walton, Jr.*
Frazer Walton, Jr.

## TABLE OF CONTENTS

PAGE

I.  Factual Background ................................................. 1

II.  The Legal Standards ............................................. 2

    A.  The Summary Judgment Standards Dictate the Denial of
        Defendant's Motion for Summary Judgment .......................... 2

III.  Argument .......................................................... 3

IV.  Plaintiff Established That She Was Subjected to Race (Native-American)
    Discrimination ........................................................ 4

    A.  Plaintiff's Team Leadership Responsibilities ........................... 6

    B.  Plaintiff's Performance Plan and Results Reports ...................... 6

    C.  Plaintiff's Special Act or Service Awards - 5 U.S.C. §4503 .......... 7

    D.  The Defendant's alleged Legitimate Non-Discriminatory Reason
        for Ms. Cochise's Non-Promotion was a Pretext ...................... 9

        1.  Mr. Kenny Could Not Remember Giving Ms. Cochise
            an "On-the-Spot Award" for her work as a Team Leader
            on Drinking Water Issues on Indian Reservations, and a
            "Star Award" for her work on the Impacts of Drought on
            Indian tribes.................................................... 9

        2.  The Defendant did not abide by the Agency's Promotion
            and Placement Manual and never established written
            standards for promotion ......................................... 12

V.  Plaintiff Was Subjected To a Hostile Work Environment ..................... 13

    A.  Plaintiff was Retaliated against by the Defendant when Time
        Sensitive and Important Information was placed in the
        Director's Locked Office, which prevented her from being
        able to fulfill her Duties as Acting Director ........................... 14

VI.  Plaintiff Established That The Defendant Retaliated Against Her............ 16

VII.  Plaintiff Was Treated In a Disparate Manner ................................. 19

i

**ATTACHMENTS**

Statement of Dispute Material Facts

Cochise Declaration

Exhibits 1 – 14

Order

# TABLE OF CASES

|  | PAGE |
|---|---|
| *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) .............. | 2 |
| *Barth v. Gelb,* 1 AD Cas. (BNA) 1180, 1183-84 (D.C. 1983) ............. | 4 |
| *Burlington Northern & Santa Fe Railway Co. v. White,* 546 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) .......... | 18 |
| *Burton v. Batisa,* 339 F.Supp.2d 97, 110 (D.C.C. 2004) ................... | 15 |
| *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ....................... | 2 |
| *Holbrook v. Reno,* 196 F.3d 255, 263 (D.D. Cir. 1999) ................... | 18 |
| *Johnson v. Digital Equip. Corp.,* 835 F.Supp. 14, 18 (D.D.C. 1993)..... | 3 |
| *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C. Cir. 1987) ................................................................ | 2 |
| *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 ( 1973) .......... | 4, 5 |
| *Michell v. Baldrige,* 759 F.2d 80, 86 (D.C. Cir. 1985) ..................... | 18 |
| *Moore v. Ashcroft,* 401 F.Supp.2d 1 (D.D. Cir. 2005) .................... | 19 |
| *Paguin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C. Cir. 1979) ................................................................ | 18 |
| *Plummer v. Safeway, Inc.,* 1995 WL 129100 *1 (D.D.C. March 17, 1995) ................................................................ | 3 |
| *Rochon v. Gonzales,* 438 F.3d 1210, 1219 (D.C. Cir. 2006) .............. | 18 |
| *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 252 (1981) ................................................................ | 4, 5 |
| *Washington v III. Department of Revenue,* 420 F.3d 660, 661 (7th Cir. 2005) ................................... | 18 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **RENE COCHISE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 1: 06-CV-00980** |
| | ) | **(RJL)** |
| **DIRK KEMPTHOME, Secretary,** | ) | |
| **Department of the Interior,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rene Cochise ("Cochise") hereby submits the following memorandum in support of

her opposition to the Defendant's motion for summary judgment. Plaintiff asserts that there are

material facts in dispute, that genuine issues exist as to credibility, and that the Defendant's motion

should be denied as a matter of law.

## I.      FACTUAL BACKGROUND

1. Plaintiff Cochise filed several administrative discrimination complaints against the

Agency. The first complaint (WBR-00-005) alleges discrimination on the basis of race (Native

American) and reprisal for her prior participation in the EEO counseling process when: From August

25-29, 1997, and currently, actions taken by her supervisor, Chris Kenney, *i.e.*, when on December

10, 1999, a letter of counseling was issued to Ms. Cochise, and actions taken by a co-worker, Barbara

White, have created a hostile work environment.

2. The third complaint (WBR-01-021) alleged that Ms. Cochise was subjected to

discrimination based upon race (American Indian) and reprisal when she was subjected to a hostile

work environment from March 15, 2001 to April 24, 2001. Ms. Cochise alleges that during a meeting

with Mr. Kenney, he told her that he was conducting an "administrative investigation" into her misconduct for failing to follow his instructions and that if she gave any false answers to his questions that she could be subjected to criminal prosecution. Mr. Kenney also proposed a three-day (3) suspension without pay for her alleged misconduct for failure to follow his instructions. However, Mr. Kenney's superior officers refused to approve the three-day suspension; therefore, the suspension did not take place.

## II.    THE LEGAL STANDARDS

### A.    The Summary Judgment Standards Dictate the Denial of Defendant's Motion for Summary Judgment.

Fed. R.Civ.P. 56 provides that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C. Cir., 1987). If the evidence is "merely colorable" or not significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249-50.

In employment discrimination cases, summary judgment "must be viewed with special caution because intentional discrimination . . . [is] difficult for a plaintiff to establish."

*Plummer v. Safeway, Inc.,* 1995 WL 129100, *1 (D.D.C. March 17, 1995) (citing *Johnson v. Digital Equip. Corp.,* 835 F. Supp. 14, 18 (D.D.C. 1993). Plaintiff Cochise maintains that she has provided ample, substantial, significantly probative evidence that there exist genuine issues of fact for trial, that such evidence would permit a reasonable jury to find in Plaintiff's favor, and that this Court should accordingly deny Defendant's Motion for Summary Judgment in its entirety.

### III.    ARGUMENT

Plaintiff's immediate supervisor, Chris Kenny engaged in inappropriate conduct with an office co-worker (Barbara White) that resulted in Plaintiff being discriminated against on the basis of her race. The inappropriate conduct [a romantic relationship] included Mr. Kenny introducing Ms. White as his personal friend; frequently sitting beside her during meetings and after hours; and assisting Ms. White with her chair and coat during office hours. The inappropriate conduct created a hostile work environment that adversely affected several office employees, including Rene Cochise. Although Plaintiff served as a team leader, and acting director, and received performance awards, she was prevented from being promoted to the career ladder Policy Analyst – GS-14 Grade. Plaintiff also suffered disparate treatment when given work assignments, and she was denied access to information and documents.[1]

The administrative judge's decision was biased, arbitrary and erroneous. The administrative judge's conclusion found that the "[c]omplainant has not shown, by a preponderance of the evidence, that the Agency subjected her to discrimination based on her national origin, or retaliated against her for her previous EEO activity." *See, Defendant's Motion for Summary Judgment, Exhibit L, p. 8.* Plaintiff Cochise did not file a complaint of

---

[1] / The Defendant avoids discussing the allegations of discrimination, and instead focuses on the hostile work environment and retaliation claims.

discrimination based upon her national origin. Plaintiff's complaint was based upon race [Native-American] discrimination. This was just one of the many prejudicial errors made by the administrative judge.

## IV.    PLAINTIFF ESTABLISHED THAT SHE WAS SUBJECTED TO RACE (NATIVE-AMERICAN) DISCRIMINATION

In order to establish a claim of discrimination based upon race (Native-American) under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e et seq., a Plaintiff has the initial burden of proving a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252 (1981); *Barth v. Gelb,* 1 AD Cas. (BNA) 1180, 1183-84 (D.C. 1983). A Plaintiff can meet this burden by presenting evidence sufficient to create an inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Ms. Cochise established a prima facie case of race discrimination based upon the criteria set forth under *Green* and *Burdine, supra.*

Rene Cochise is (1) a member of a protected group as a Native-American; and (2) she was qualified and eligible for promotion to the GS-14 career-ladder position, and despite her qualifications, she was denied promotion.

If the Plaintiff meets the burden of showing a prima facie case, the burden then shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Burdine,* 450 U.S. at 253-54; *McDonnell Douglas, supra,* 411 U.S. at 802. Should the Defendant articulate a legitimate, nondiscriminatory reason in order to prevail, the Plaintiff must be able to prove by a preponderance of the evidence that the legitimate reason asserted by the Defendant in support of the challenged action is not the true reason, but is a pretext for discrimination. *Burdine,* 450 U.S. at 252-53; *McDonnell Douglas,* 411 U.S. at 804.

4

In its summary judgment motion, the Defendant fails to assert a legitimate nondiscriminatory reason for refusing to promote Ms. Cochise.  The Defendant fails to explain why Ms. Cochise was not given equal access to information, and why the Defendant adversely affected the terms and conditions of Plaintiff's employment as set forth in the specific allegations outlined in the complaint.  Instead, the Defendant spends most of its argument discussing Plaintiff's hostile work environment allegations without first addressing the underlying claims of discrimination.

The Defendant attempts to trivialize the complaint by asserting that "[l]ike the plaintiff in Bryant v. Brownlee, Plaintiff merely provides a list of the incidents that occurred during her employment with the agency that she was displeased with and labels them as discriminatory. . She completely fails to link the actions to her protected status." *See, Def. Motion for Summary Judgment, p. 6.*  The Defendant's strongest argument against promoting Ms. Cochise is that she is "a difficult employee who complains about a list of events that occurred to her while employed at the Department of the Interior." *See, Def.'s Motion for Summary Judgment, p. 2,* ¶ *2.*  Defendant's argument is frivolous and not supported by the record.  Most importantly, the argument is not defensible because the Defendant has failed to set forth a legitimate nondiscriminatory reason for its actions.

Assuming for argument that the Defendant had articulated a legitimate, nondiscriminatory reason for the non-promotion [and Plaintiff maintains the Defendant has not], Plaintiff has shown that the Defendant's purported reason for the challenged action is not the true reason, but is a pretext for discrimination. *Burdine,* 450 U.S. at 252-53; *McDonnell Douglas,* 411 U.S. at 804.  The record shows that Ms. Cochise was fully eligible for promotion to the career-ladder GS-14, but for the discriminatory practices of her supervisor.

5

### A.    Plaintiff's Team Leadership Responsibilities.

Plaintiff was hired as a Policy Analyst, GS-301-13, with the potential for promotion to a GS-14 career-ladder grade. Ms. Cochise began her employment as a Policy Analyst on August 17, 1997, and was eligible for promotion within one year. During her tenure with the Native-American Affairs Office ("NAAO"), Plaintiff performed at the GS-14 level based upon her work assignments, and her interaction with high-level federal and tribal officials. Plaintiff assisted in conducting in-depth review and analysis of Native-American legislative issues, and she assisted in the development of policy that included extensive research and analysis.

Ms. Cochise chaired the Office of Reclamation Indian O&M Working Group. *Exh. # 1, H.T., dated 01/13/04, p. 140.* As the team leader, Plaintiff coordinated the development of the team's presentation on *"Drinking Water Issues on Indian Reservations"* to the Assistant Secretary of Water and Science. Although Ms. Cochise was a GS-13 team leader, many of her team members held GS-14 & 15 positions. *Exh. # 2, H.T., dated 01/14/04, p. 441.* Plaintiff also materially contributed to the efforts of the National Drought Policy Commission in its deliberations for a report to the U.S. Congress in FY 2000. Ms. Cochise was the principal employee responsible for drafting and finalizing a report to the Commissioner of Reclamation that summarized the findings of a national drought survey. In recognition for her work on the drought project, Plaintiff received a "Star Award" with monetary recognition.

### B.    Plaintiff's Performance Plan and Results Reports.

Plaintiff received two *"Performance Plan and Results Reports"* from her supervisor, Chris Kenny. The first official rating period began on January 1, 1998, and ended on December 31, 1998. Ms. Cochise received an overall summary rating of *"Achieved,"* and

she received a rating of *"Achieved"* on all performance plan critical results. In addition, she

received a rating of *"All"* in the areas of (a) quality, (b) teamwork, and (c) consumer service.

The second official rating period began on January 1, 1999, and ended on December 31,

1999. During the second rating period, Ms. Cochise received a rating of *Achieved"* on all

performance plan critical results, and she received a summary rating of *"Achieved."* Plaintiff

also received a rating of *"Achieved"* for all critical elements, including (a) quality, (b)

teamwork, and (c) customer service. *See, Exh. # 3, ROI, Vol. III, 6-2.*[2]

The Code of Federal Regulations [Office of Personnel Management], 5 C.F.R. §

335.104, provides in pertinent part,

> No employee shall receive a career ladder promotion unless his
> or her current rating of record under part 430 of this chapter is
> "Fully Successful" (level 3) or higher. In addition, no employee
> may receive a career ladder promotion who has a rating below
> "Fully Successful" on a critical element that is also critical to
> performance at the next higher grade of the career ladder.

[51 FR 8411, Mar. 11, 1986], *Exh. # 4.*

The 1986 OPM rating of "Fully Successful" is now equivalent to the current

Department of Interior rating of "Achieved."

### C.    Plaintiff's Special Act or Service Awards – 5 U.S.C. § 4503.

During the relevant time period, Ms. Cochise received several service awards for

outstanding employee performance. First, Plaintiff received an "On-the-Spot Award" in the

net amount of $500.00. The award was officially made and approved by Chris Kenny on July

6, 1998. The monetary award justification stated in pertinent part that,

> "Ms. Rene Cochise served as the Team Leader in developing the Director, Native
> American Affairs Group, presentation to the Assistant Secretary – Water and
> Science on 'Drinking Water Issues on Indian Reservations.' Ms. Cochise worked

---

[2] / In FY 1998-99, the Department of Interior assigned two possible employee performance ratings. The employee is rated as having *"Achieved" or "Not Achieved"* the expected employee performance level.

7

through the Indian health Service and the Bureau of Indian Affairs as well as Reclamation to gather information for this presentation. This presentation was well received by the Assistant Secretary and her staff, much to the credit of Ms. Cochise's efforts."

On January 2, 2000, Ms. Cochise received a "Star Award" in the amount of $500.00. Chris Kenny and Steven Magnussen, Director of Operations made the recommendation for the award. The monetary award justification and citation stated that,

> "As a member of the National Drought Policy Commission, the Commissioner agreed to provide staff support to provide the Commission information on the impacts of drought on Indian tribes. Ms. Cochise was asked to support Roseanne Gonzalez in that effort. Ms. Cochise helped develop a survey instrument and made the contacts to survey Indian tribes on drought issues. In addition, Ms. Cochise was the principal person responsible for drafting and finalizing a report to the Commissioner, which summarized the findings of the survey. Ms. Cochise materially contributed to the efforts of the National Drought Policy Commission in its deliberations for a report to Congress in FY 2000."

On April 4, 2001, the Jicarilla Apache Nation issued a Resolution in support of Plaintiff's detail assignment and work to the U.S. House of Representatives – House Resources Water & Power Subcommittee. The Resolution was given to members of Congress, and the Commissioner of the Bureau of Reclamation – U.S. Department of Interior.

On January 23, 2003, Plaintiff received a "Star Award" in the amount of $843.17. The award was made and approved by Kathy A. Carlson, Program Manager, Office of Security, Safety and Law Enforcement, and Larry L. Todd, Director, Office of Security, Safety and Law Enforcement. The monetary award justification stated in pertinent part that,

> "In recognition of your response to post-9/11 immediate needs and advancing accomplishment of the 17 tasks, the Office of Security, Safety and Law Enforcement takes pride in presenting you a Star Award in the amount of $500.00.
>
> You did an outstanding job and provided invaluable leadership in recommending and implementing multi-dimensional changes in the Bureau of Reclamation."

8

*See, Exh. # 5.*[3]

Throughout her tenure with the department, Ms. Cochise maintained an outstanding job performance record, and she received official recognition for her performance. Therefore, the Defendant did not and could not articulate a legitimate nondiscriminatory reason for her non-promotion to the career-ladder GS-14 grade.

**D.    The Defendant's alleged Legitimate Non-Discriminatory Reason for Ms. Cochise's Non-Promotion was a Pretext.**

1.  Mr. Kenny Could Not Remember Giving Ms. Cochise an "On-the-Spot Award" for Her Work as a Team Leader on Drinking Water Issues on Indian Reservations, and a "Star Award" for Her Work on the Impacts of Drought on Indian tribes.

During the course of the administrative investigation and hearing, Plaintiff's Supervisor's deposition was taken. At his deposition, Mr. Kenny could not recall giving Ms. Cochise an "On-the-Spot Award for her work as a Team Leader on Drinking Water Issues on Indian Reservations, and a "Star Award" for her job performance in support of the National Drought Policy Commission study on Indian tribe drought issues. In fact, Mr. Kenny stated that Plaintiff had not performed "real well," on the project, but the record shows that he gave her two monetary awards for her job performance on those projects. Mr. Kenny gave the following pertinent testimony during his deposition:

BY MR. WALTON:

Q:    Did you give any type of accommodation to Mrs. Cochise for her work in this assignment?

A:    Accommodation? I'm sorry.

Q:    Any type of recommendations, accommodations, or awards.

---

[3] / Plaintiff was transferred to the Office of Security, Safety and Law Enforcement after the altercation and incident with Chris Kenny.

A:      I don't recall doing that, no.

Q:      Going to paragraph 2, the second project assigned to Mrs. Cochise was to analyze and restructure the statistical information in a published document as part of a briefing to the Assistant Secretary.  Do you recall that?

A:      Yes.

Q:      How did Mrs. Cochise perform that?
A:      Not real well.  Parts of it, she did relatively well.  Parts of it I was disappointed in.

Q:      Now, to your knowledge, did she receive any type of accommodation or an award for her work involved in that project?

A:      I don't remember.

MR. WALTON:        I'd ask that we mark this as Complainant's No. 3.

(Complainant's Exhibit No. 3 was marked for identification.)

BY MR. WALTON:

Q:      I'm showing you, Mr. Kenny and Mrs. Armstrong, what's been marked as Complainant's Exhibit No. 3, I'd ask you if you can identify this document And if so, what you identify it to be.

A:      It's a personnel action that notes a monetary award.

Q:      Do you know what the monetary award was for?

A:      No.

Q:      Do you know who gave the monetary award?

A:      I gave the monetary award.

Q:      But you don't recall what it was for?

A:      Not specifically, no.

Q:      Would you have any way, in the future, finding that out?

A:      Yes.  Because I'm sure it is in our personnel file.

Q:      Could this be for the project that we're speaking of, the second project?

10

A:    I don't know.

Q:    Going [sic] to the next sentence, "Finally, I assigned Mrs. Cochise a high visibility project requiring the management of a policy team." Would you take a look at that?

A:    Yes.

Q:    Did there ever come a time when you gave any type of award or accommodation to Mrs. Cochise concerning this project?

A:    I don't remember.

MR. WALTON:

Q:    Showing you what's been marked as Complainant's Exhibit No. 4 for Identification, I'd ask you if you recognize this document and, if so what do you recognize it to be?

A:    I recognize this as a personnel action for a monetary award.

Q:    What's the date of that award?

A:    January 2, 02; January 2, 2000.

Q:    Do you know what that award was given for?

A:    No, but I'm sure that we have documentation in the files that we could Compare – match up with it.

Q:    So, if I represented to you that that award was given for this project, the High-visibility project that is referenced in the beginning of "Finally, I Assigned Mrs. Cochise to a high visibility project," do you doubt that it Was given for that particular project?

A:    I just don't know.

Q:    Could it be?

A:    I don't know.

*Exhibit # 6, Deposition of Chris Kenny, pgs. 102:17 – 106:22; and Exh. # 7,*

*Defendant's Responses to Plaintiff's Request for Admissions, ¶¶ 4,5,6 & 7.*

11

When Mr. Kenny's deposition was taken on April 30, 2002, he had no recollection

that he had given Mrs. Cochise two awards for major work done on two high visibility

projects within the Office of Native American Affairs.  Instead, Mr. Kenny asserted that

his recollection was that Mrs. Cochise had basically not performed well on the projects.

Nothing was further from the truth.

> 2.  The Defendant did not abide by the Agency's Promotion and Placement
>     Manual and never established written standards for promotion.

The Department of Interior's Department Manual – Chapter 335: Promotion and

Internal Placement – Section C, provides in pertinent part that, "Consideration will be given to

performance appraisals and incentive awards." *Exh. # 8.*  Mr. Kenny was asked about the

standards that he applied to consider Ms. Cochise for promotion, and he gave the following

testimony.

BY WALTON:

Q.    Do you have any standards that you established for career promotions, any
      written standards?

A.    In general?  In what context?  No. The answer's no.

Q.    Okay.  Did you ever establish a policy or procedure prescribing factors
      That should be considered for an employee being promoted?

A     No.

There were standards or criteria for the approval of career-ladder promotions, and Mr.

Kenny never considered Ms. Cochise's performance appraisals or incentive awards.  In fact,

Mr. Kenny did not recall that Ms. Cochise had been given incentive awards, although he

approved the awards himself.  Mr. Kenny's explanation for Ms. Cochise's non-promotion was

a pretext to cover the Defendant's discriminatory actions.

## V. PLAINTIFF WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT.

At least four witnesses have testified that a hostile work environment existed in the Native-American Affairs Office. The hostile work environment was created because of the romantic relationship between Mr. Kenny and his subordinate employee, Barbara White.

Ms. Cochise was the only Native-American Policy Analyst employed within the Office of Native-American Affairs, and she was the only employee (a) denied job assignments; (b) prevented from making contacts with Indian tribes; and (c) prevented from receiving important and timely documents.

The NAAO workplace was sufficiently hostile and intolerable, and the treatment of the Plaintiff was so severe, pervasive and abusive that a number of female employees stepped forward to confront and reveal Chris Kenny's discriminatory conduct.

Saundra Tabron, testified that when she was employed under the supervision of Chris Kenny, a hostile work environment existed in the Native-American Affairs Office ("NAAO"). Ms. Tabron stated that "Christopher Kenney was not a fair person. . . ." Ms. Tabron stated that she was not aware of Ms. Cochise's prior EEO activity. *Exhibit # 9, Affidavit of Saundra Tabron, ROI, Vol. III, at 16:3.*

Romona Saunders, an Assistant Program Manager, GS-12, in the Native-American Affairs Program, Lower Colorado Region, stated that in her opinion, "a hostile environment does exist in the NAAO. A couple of things are contributing factors. I believe Christopher Kenney and Barbara White have an inappropriate relationship that is hostile to others. . . . ." "I have been verbally attacked by Ms. White on the positions I have taken, and Mr. Kenney has supported her without getting my perspectives." *Exhibit # 10, Affidavit of Romona Saunders, ROI, Vol. III, at 17:4.*

13

Deborah Anne Saint, a Program Manager, GS-14, in the Native-American Affairs Office (NAAO), Lower Colorado Region, testified that "Ms. Cochise has said to me that she felt that Mr. Kenney was unfair to her by listening to Ms. White without getting her input into what has actually happened. I have experienced this. On two occasions, Mr. Kenney reported problems to Bob Johnson based on Ms. White's input without ever discussing the matter with me. . . ." "I have no direct knowledge that a hostile environment exists within the NAAO. I do not have much contact with the office now, but I have personally experienced a great deal of hostility from the office, which I believe has been caused by Mr. Kenney." *Exhibit # 11, Affidavit of Deborah Saint, ROI. Vol. III, 18:4-5.*

Lynne Davis Dyer, a Program Analyst, GS-11, stated under oath that in her opinion, "a hostile environment existed in the Native-American Affairs Office. . . . Most of the hostility was the sense of being judged, scrutinized, and questioned by Ms. White. She would complain about Ms. Cochise a lot and make implications about her travel and her comings and goings. Mr. Kenny never did anything to stop the implications she was making. Ms. White used to be friendly to me, but after I realized what was going on and did not join in her bashing of Ms. Cochise, she was no longer [sic] friendly." *Exhibit # 12, Affidavit of Lynne Davis Dyer, ROI. Vol. III, 19:4.*

A. **Plaintiff was Retaliated against by the Defendant when Time Sensitive and Important Information was placed in the Director's Locked Office, which prevented her from being able to fulfill her Duties as Acting Director.**

Plaintiff complained that on March 28, 2000, she was serving as Acting Director in the absence of her supervisor.[4] Ms. Madalena [Chris Kenny's secretary] took time-sensitive information that was coming into the office and locked the information in Mr. Kenny's office, during the period Plaintiff

---

[4] / Plaintiff filed an EEO complaint on February 29, 2000.

14

was serving as the Acting Director.  This prevented the Plaintiff from meeting a time-sensitive agency

deadline.  As a result, the Department of Interior was unable to provide its comments regarding a

water rights settlement bill that was pending before the U.S. Congress.  *See, Exh. # 13, Cochise Depo.,*

*10-11-07, pgs.76:14 – 77:15.*

Mr. Kenny admitted that the Plaintiff was unable to obtain time-sensitive information that was

locked in his office and that Rene Cochise was unable to give timely comments to pending

congressional legislation during the period that she served as the Acting Director.  At his deposition,

Chris Kenny made the following statement after being questioned:

Q.    Twice.  In one incident where you appointed her as acting director, do you
recall a situation where there was a complaint concerning material being
locked in your office in your absence and where she was unable to obtain that
information?

A.    Yes.

Q:    Would you tell me your knowledge of that incident.

A.    My memory was as acting director, she was asked to provide comments on
some pending legislation.  She was having difficulty finding the material that had
come into the office and the report was that that frustrated her ability to be
responsive to the request.

Q.    She made an attempt to get into your office.  Is that correct?

A.    I don't know.

Q.    Do you recall whether or not your secretary ever admitted that she did not
give Mrs. Cochise certain documents that were in the possession of your
office?

A.    I have correspondence from my secretary that she had misplaced and
misunderstood and was late in getting documents to Mrs. Cochise.  That's
what I remember.

*See, Exh. # 6, Kenny Depo., 04/30/02, pgs. 32:4 – 33:5.*

15

Chris Kenny also stated that as an acting director, Mrs. Cochise would have a need on occasion to go into his office. Mr. Kenny admitted that when Mrs. Cochise attempted to get into his office, she was prevented from doing so by his secretary. Mr. Kenny described the actions of his secretary as a "misunderstanding," and he stated that in his absence, his office is usually locked. *See, Exh. # 6, Kenny depo., 04/30/02, pgs. 33:17 – 35:9.*

As a result of the incident, the Plaintiff was unable to perform her duties as the Acting Director, and this affected the terms and conditions of her employment. The refusal to allow the Plaintiff into the office was an act of retaliation because of her prior EEO activity.

First, Plaintiff engaged in a statutorily protected activity when she filed an EEO complaint on February 29, 2000. Secondly, she was subjected to adverse personnel action because she was unable to gain access to the Director's office in order to obtain information that was necessary for her to prepare a response to a pending congressional inquiry. The Defendant was aware of her need to gain access to the office, but he locked the office during his absence. This impeded Plaintiff's ability to perform the duties of Acting Director, and ultimately had a bearing on her performance and opportunities for promotion. Thirdly, a causal connection existed between the adverse action [office lock-out] and the EEO protected activity which occurred just one month earlier. Chris Kenny was aware of the February 29th EEO complaint because the complaint was filed against him and he responded to the complaint.

It is clear that Rene Cochise was subjected to an act of retaliation, when she was prevented from responding to the congressional inquiry.

## VI.    PLAINTIFF ESTABLISHED THAT THE DEFENDANT RETALIATED AGAINST HER BECAUSE OF HER PRIOR EEO ACTIVITY.

In the instant lawsuit, Plaintiff alleged that because of her prior EEO activity, she was denied promotion to the GS-14 grade, and was prevented from performing the duties of her

16

position due to the retaliatory actions of the Defendant. *See, Complaint* ¶¶ 8, 9, 12, 13, 29, 36,

37 and 45; *Cochise Declaration* ¶ *5, 6, 9, 14 and 15.*

The allegations contained in the instant federal court complaint include, among other

things, that (1) Plaintiff received a letter of counseling and a reprimand from her supervisor;

(2) her supervisor failed to provide work assignments and information that were necessary for

her advancement to the GS-14 grade; (3) Plaintiff was issued a directive by her supervisor

instructing her not to meet with any Indian tribes unless first approved by him, and he did not

apply the directive to other similarly-situated employees; (4) Plaintiff was not given access to

important and time-sensitive office correspondence, which prevented her from performing her

duties as acting director; (5) Plaintiff was physically assaulted by her supervisor; (6) Plaintiff's

supervisor suspended her open travel authorization; and (7) Plaintiff was warned that her

supervisor was conducting an administrative investigation into her "misconduct" and that she

could be subjected to criminal prosecution. Plaintiff also alleged that she was treated in a

disparate manner because of her race and in retaliation for having filed previous complaints of

discrimination.

It is also undisputed that Plaintiff contacted an EEO in June 1999, November 1999, and

February 2000, and that the Defendant was aware of the Plaintiff's prior EEO activity.

Plaintiff hereby incorporates each and every argument set forth in her motion for partial

summary judgment based upon claims of retaliation.

The U.S. Supreme Court has now defined retaliation, and held that "[t]he anti-retaliation

provision protects an individual not from all retaliation, but from retaliation that produces an

injury or harm. As we have explained, the Courts of Appeals have used differing language to

describe the level of seriousness to which this harm must rise before it becomes actionable

17

retaliation. We agree with the formulation set forth by the Seventh and the District of Columbia Circuits. In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' *Rochon v. Gonzales,* 438 F. 3d 1210, 1219 (D.C. Cir. 2006) quoting *Washington v. Ill. Dep't. of Revenue,* 420 F. 3d 660, 662 (7th Cir. 2005)." *Burlington Northern & Santa Fe Railway Co. v. White, 546 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345, (2006).*

Rene Cochise has alleged that she was denied promotion because of her prior EEO activity. "In determining whether a challenged action constitutes an adverse employment action, a court should focus on 'ultimate employment decisions' such as 'hiring, granting leave, discharging, **promoting**, and compensating,' not intermediate decisions that have no immediate effect upon employment decisions." *Burton v. Batisa,* 339 F. Supp.2d 97, 110 (D.D.C. 2004).

*Emphasis added.*

Plaintiff was also harmed by the Defendant's reprisal actions because she was unable to perform the essential duties of her position, and that too affected her opportunity for the career- ladder GS-14 promotion. The Defendant's retaliatory actions clearly support Plaintiff's claims of retaliation. To sustain a retaliation claim under Title VII, a Plaintiff must establish that: 1) he or she engaged in a statutorily-protected activity; 2) he or she was subjected to adverse personnel action; and 3) a causal connection exists between the adverse action and the protected activity. *Michell v. Baldrige,* 759 F. 2d 80, 86 (D.C. Cir. 1985); *Paguin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C. Cir. 1997); *Holbrook v. Reno,* 196 F. 3d 255, 263 (D.D. Cir. 1999).

18

If the plaintiff establishes a *prima facie* case of retaliation, the analysis then follows as that for a discrimination claim. *Moore v. Ashcroft*, 401 F. Supp. 2d 1 (D.D. Cir. 2005). Without being redundant, it is undisputed that Plaintiff engaged in prior EEO activity, and that certain agency actions were taken against her by the Defendant shortly after the EEO activity. Plaintiff hereby incorporates each and every issue and argument made in her partial motion for summary judgment that was filed on July 7, 2008.

Therefore, Plaintiff has established that because of her prior EEO activity, she was subjected to retaliation, and that partial summary judgment in her favor should be granted.[5]

## VII.    PLAINTIFF WAS TREATED IN A DISPARATE MANNER.

Plaintiff was and is required to have contact with Indian tribes in order to fulfill her job responsibilities and duties. On March 9, 2000, Rene Cochise was issued a directive by Chris Kenney instructing her not to meet with any Indian tribes unless approved by Mr. Kenny first. The directive was issued to Ms. Cochise nine (9) days after she filed a February 29, 2000, EEO complaint against Mr. Kenny. Chris Kenny's directive was never issued to other similarly-situated employees within the Native-American Affairs Office. The directive only applied to Ms. Cochise, who was the only Native-American Policy-Analyst in the office. This allegation was fully supported by other similarly-situated Policy-Analyst within the office.

Lynne Davis Dyer, Program Analyst, GS-11, stated in her affidavit that,

> "I am aware of the directive being issued to Ms. Cochise because she told me about it. No one else has had a similar directive issued to him or her, and I know of no policy on employees meeting with Indian tribes. The reason Ms. Cochise gave me concerning Mr. Kenney's directive to her was that he felt that because she was Native American, he believed her friendship with the tribes would provide entrée to tribal governing members, and he wanted to take advantage of it. She believed this was wrong, and that these friendships were personal and not work related. Two members of our office, Darrell Ewing and John

---

[5] / Plaintiff has filed a motion for partial summary judgment on her claims of retaliation.

Peterson are located in Denver, CO, and their jobs are equivalent to Ms. Cochise's job. They met with Indian tribes and this level of Scrutiny was not applied to them. The restrictions were applied to Ms. Cochise because of Mr. Kenney's animosity toward her."

*Exh. # 12, ROI, 19:10-11, Affidavit of Lynne Dyer.*

The "New Directive" prevented Ms. Cochise from doing her job, and restricted her access to the very entities she was charged with serving. Mr. Kenny also violated the terms and conditions of Plaintiff's employment because he negated the requirements of her position. Specifically, the Plaintiff's job description (*Position Description – Policy Analyst, GS-343-13/14) provides* in pertinent part that:

6.      Personal Contacts

Contacts are with key personnel in the Department of the Interior, the Commissioner's Office, regional and field offices, water users Organizations and **Indian tribes.**

*Exh. No. 14,* ROI, Vol. II, Ex. 5-1A, p. 3.

The Plaintiff has established a prima facie case of disparate treatment. The Defendant has failed to explain why Chris Kenney ignored the requirements of the Plaintiff's position description, and restricted her from contacting Indian tribes like all other office professionals. Witness Lynne Davis summarized Mr. Kenny's reasons for restricting Ms. Cochise's activities – *"The restrictions were applied to Ms. Cochise because of Mr. Kenney's animosity toward her."*

**CONCLUSION**

There are genuine issues of material fact to be decided by the Court. Based upon the arguments and evidence presented above, Plaintiff Cochise respectfully moves the Court to deny the Defendant's motion in its entirety.

20

Respectfully submitted,


*Frazer Walton, Jr.*_____
Frazer Walton, Jr. #374301
920 Burns Street, S.E.
Washington, D.C.  20019
(202) 584-7572

Counsel for Plaintiff Cochise

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **Rene Cochise,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil A. No. 06-980 (RJL)** |
| | ) | |
| **Dirk Kempthone, Department** | ) | |
| **Of The Interior,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**STATEMENT OF DISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

Purusant to LCvR 7, Plaintiff, Rene Cochise ("Plaintiff"), respectfully submits the

following statement of material disputed facts in support of her opposition to Defendant's

motion for summary judgment.

1. Plaintiff was denied promotion to the career ladder GS-14 grade because Mr.

Kenney failed to remember that he recommended Ms. Cochise an "On-the-Spot Award"

for her well received work performance as the Team Leader in developing a presentation

on 'Drinking Water Issues on Indian Reservations" to the Assistant Secretary for Water

and Science. *Exh. # 6, Deposition of Chris Kenny, pgs. 103-104; and Exh. # 5, Cochise's*

*"On the Spot Award."*

2. Plaintiff was denied a promotion to GS-14 because Mr. Kenny, again did not

remember that he had recommended Ms. Cochise for a "Star Award" for her leading role

in the preparation of a report drought issues presented to the National Drought Policy

Commission. *Exh. # 6, Deposition of Chris Kenny, pgs. 105-106; and Exh. # 5, Cochise's "Star Award."*

3. Mr. Kenny created a hostile work environment because of his relationship with his subordinate employee, Barbara White. *Exh. Nos. 9, 10, 11 and 12, Affidavits of Saundra Tabron, Romona Saunders, Deborah Anne Saint and Lynne Davis Dyer; and Declaration of Rene Cochise ¶¶ 1, 6, 7, 10, 12 and 14.*

4. Plaintiff Cochise was also denied promotion to GS-14 because of the inappropriate [romantic] relationship that he had with subordinate employee, Barbara White. *Exh. Nos. 10 and 12, Affidavits of Romona Saunders and Lynne Davis-Dyer; and Declaration of Rene Cochise ¶¶ 1,7,10, 12 and 14.*

5. On November 14, 1997, A hostile work environment was caused by the inability of Mr. Kenney to be objective when it came to Ms. Barbara White. The fact that they had an inappropriate relationship affected Ms. Cochise and the other females in the Washington office. In reference to said training, Ms. White coordinated this training and perceived the questions raised by Ms. Cochise as disruptive and negative. Mr. Kenney routinely sided with Ms. White and due to the intimate relationship they had could not be objective. Mr. Kenney routinely sided with Ms. White. *Exh. Nos. 9, 10, 11 and 12, Affidavits of Saundra Tabron, Romona Saunders, Deborah Anne Saint and Lynne Davis Dyer; and Declaration of Rene Cochise ¶¶ 1, 6, 7, 10, 12 and 14.*

6. On March 3, 1998, a hostile work environment was caused by the inability of Mr. Kenney to listen and be objective when the request made by Dave Archambuld, Tribal Council member and Vice Chairman of the Secretary's Tribal Task Force on Water Rights, was expressed. This request caused an adverse effect upon my working

2

relationship with other staff members and Mr. Kenney, due to the fact that no one else on staff had the tribal relationship or network I maintained. This request was not solicited or was it orchestrated by Ms, Cochise. The insecurity in Mr. Kenney manifested itself and what was a simple request became larger than life. A hostile work environment was created when Mr. Kenney chose then not to speak to me, the silent treatment continued and the staff was affected by this. Ms. Cochise was treated as thought she did not exist. *Exh. # 11, Affidavit of Deborah Saint, 19:4; and Declaration of Rene Cochise, ¶ 2.*

7. The evening before, on March 11, 1998, Ms. Cochise was invited to participate in staff functions at a colleague home. All staff members were present for this after hour celebration that carried on into the night. Reprisal was imposed on Ms. Cochise for refusal of the invitation for this after hour function. The following day, March 12, 1998, Mr. Kenney had a hangover and when Ms. Cochise showed up late, after lunch, Mr. Kenney made it apparent that he was angry at her. Mr. Kenney behavior displays anger from the rejection and refusal to go out. This rejection manifested itself in his treatment towards her and created a hostile work environment. *Declaration of Rene Cochise ¶ 3.*

8. On January 8, 1999, a hostile work environment was created by Mr. Kenney when he referred to the three Regional Directors as the "Three Amigos". By doing this Mr. Kenney caused confusion and chaos among the working group members. Mr. Kenney was pulled aside, by Ms. Cochise, and in private, advised not to publicly make inappropriate remarks. Mr. Kenney refusal to accept constructive criticism and the fact that this was mentioned provoked Mr. Kenney. The actions of Ms. Cochise to state that said remark was distasteful, not amusing, created reprisal and ultimately lead to

3

condemned treatment and treated differently by Mr. Kenney than those not in my

protected class. *Declaration of Rene Cochise ¶ 4.*

9. On April 8, 1999, I requested via EEO counselor to discuss the following issues;

raised (1) hostile work environment; (2) confidentially; (3) inappropriate behavior on the

part of Mr. Kenney and Ms. Barbara White; (4) inappropriate remarks concerning co-

workers and other Reclamation staff; (5) Rotating the Acting Director position; (6) Mr.

Kenney's failure to approve my career-ladder promotion to Policy Analysis GS 14.; and

(7) reprisal. *Declaration of Rene Cochise ¶ 5.*

10. Mr. Kenney and Plaintiff met with a mediator on June 2 and 3, 1999, to attempt to

address the issues. The issues that were raised were; (1) hostile work environment; (2)

confidentially; (3) inappropriate behavior on the part of Mr. Kenney and Ms. Barbara

White; (4) inappropriate remarks concerning co-workers and other Reclamation staff; (5)

Rotating the Acting Director position; (6) Mr. Kenney's failure to approve my career-

ladder promotion to Policy Analysis GS 14; and (7) reprisal.

Their was very little discussion on criteria used to potentially promote Ms. to GS-14,

this was due to the fact that Mr. Kenney's was dealing was angry at Ms. Cochise for

mentioning the intimidate and/or inappropriate relationship he had with Ms. Barbara

White. All the other issues were discussed, but this one was more difficult for Mr.

Kenney to deal with. *Declaration of Rene Cochise ¶ 6.*

11. During the mediation Mr. Kenney was repeatedly asked by Ms. Cochise who

specifically in the office was raising this issue. It became apparent that Ms. Barbara

White was the individual who was having difficulty with Ms. Cochise. Once again due

to the romantic and intimate relationship between Mr. Kenney and Ms. Barbara White were having, this had an effect on my capability to do my job in the office.  Ms. Cochise was never provided the opportunity of provide justification or for the complaints made by Ms. White, Mr. Kenney routinely sided with Ms. White on all staff related issues because of their prohibited and biased relationship.  *Exh. Nos. 10 and 12, Affidavits of Romona Saunders and Lynne Davis-Dyer; and Declaration of Rene Cochise ¶¶ 1,7,10, 12 and 14.*

12. I requested through Mr. Kenney that my detail be terminated.  This was due to the unprofessional requested sensitive information on the part of Mr. Kenney.  I felt the only way to remove myself from this situation was to do this terminate my detail.  I made the request and it was granted by Mr. Kenney.  *Declaration of Rene Cochise ¶ 8.*

13. Although the Bureau's Drought Program was a challenging assignment, the declarant prevailed in the end.  Ms. Cochise was acknowledged and received a cash award for the support provided to the National Drought Policy Commission and provided information on impacts of drought on Indian tribes.  This information contributed to the efforts of the Commission in it deliberations for a report to Congress in FY 2000. Although Ms. Gonzales may have lack leadership skills, that was not the case in reference to Ms. Cochise.  *Exh. # 5, Star Award and On-the-Spot Award; and Declaration of Rene Cochise ¶ 9.*

14. In November of 1999, a hostile work environment was caused after Ms. Cochise brought to Mr. Kenney's attention, while Ms. Barbara White was going through her divorce, Mr. Kenney was liberal and showed favoritism in how he treated her.  Ms, White was allowed to be out of the DC area so she would be away from her soon to be ex-husband.  This favoritism and the unprofessional relationship that existed between Mr.

Kenney and Ms. Barbara White had adverse effect on me while on travel and after I submitted vouchers for processing for payment. The record shows that her travel voucher was fully justified, and the Defendant admits this fact.

In reference to said trip to Albuquerque, NM. I did not request a bigger rental car. Upon arrival in Albuquerque NM, all compact cars were unavailable. I took what was available on the lot. Ms. White openly complained in front of other staff members, about me having a rental car on this trip. When Ms. White asked for justification, Ms. Cochise provided it. But due to the animosity Ms. White held for Ms. Cochise, she created an argument. This was typical of Ms. White, since she knew Mr. Kenney would side with her. This in itself created a hostile work environment because Mr. Kenney could not be objective in his management of Ms. Cochise. *Exh. Nos. 10 and 12, Affidavits of Romona Saunders, 17 and Lynne Davis-Dyer, 19:4; and Declaration of Rene Cochise ¶10.*

15. Four events contributed to the issuance of the "Memorandum of Counseling"; the *first* was September 3, 1999, Ms. Cochise was not willing to support the nomination of Mr. Kenney for a Diversity award. The fact that Ms. Cochise openly was unwilling to support this nomination, a hostile work environment developed. *secondly*, soon after the diversity award incident, Ms. Cochise requested copies of her time and attendance, and was notified that many of her files were missing, specifically pay period 8 – 20. Ms. White was Acting Director during this time frame. Furthermore, Mrs. Madalena, office secretary, withheld important information about earned credit hours; and *third,* November 24, 1999, I was informed that Ms. White was questioning my use of a rental vehicle. I was confused by this, Ms. White never raised this issue to me, but was in fact raising this issue with others in the office. This was confusing, as stated when Ms. White was going

6

through her divorce. Mr. Kenney granted her liberal travel. This liberal travel included the use of a vehicle.

The final, *fourth*, incident was On December 6, 1999, Ms. Cochise prepared and issued Mr. Kenney a letter...I feel you are once again in violation of the signed EEO agreement. The EEO agreement has been damaged and violated. I have contacted an EEO counselor on November 30, 1999, and will pursue to have the original EEO case reopened. This was hand delivered to Mr. Kenney and his immediate supervisor. Thereafter Ms. Cochise was issued the aforementioned "Memorandum of Counseling." Mr. Kenney's issuance of the Memorandum was reprisal for Ms. Cochise's contacting and moving forward with an EEO complaint against him and Ms. Barbara White. *Declaration of Rene Cochise ¶ 11.*

16. On March 6, 2000, a hostile work environment was caused by Mr. Kenney, when he questioning who wrote said paper and then made the statement "this paper is fluff", this is not constructive. Mr. Kenney does not treat other similarly situated members within our office in this manner. Mr. Kenney's actions were unprofessional and further breached the agreement he made with Ms. Cochise, by his repeated failure to openly communicate with Ms. Cochise on work products. Instead Mr. Kenney chooses to behave in an unprofessional manner; this further creates a hostile work environment. *Declaration of Rene Cochise ¶ 12.*

17. The first meeting with the Jicarilla Apache Tribe, April 8, 1999 was by invitation. Mr. Kenney created a hostile work environment by accusing me of orchestrating this meeting. When I explain, I was invited to by the tribe, this seem to provoke him. This created hostility in Mr. Kenney. *Declaration of Rene Cochise ¶ 13.*

7

18. On March 21, 2000, a hostile work environment was caused by Ms. Barbara White and Mr. Kenney through the repeated failure of Mr. Kenney and Ms. White not to share information on work assignments that are time sensitive and through Mr. Kenney's granting of preferences and favoritism in assigning work and responsibilities to other similarly situated employees not in my protected class. This assignment was handed to Ms. Cochise until Monday March 20, 2000, at 11:00 am. This assignment was due that morning. This assignment was originally Betty Johnson's.

This hostile work environment has manifested itself in Mr. Kenney's repeated selection of Ms. White to take over management responsibilities of the office during his absence. This was the case here. Mr. Kenney went on travel leaving Ms. White once again Acting Director. Ms. White is at the root of my EEO complaint and has used her relationship with Mr. Kenney to create a hostile work environment for me. *Declaration of Rene Cochise ¶ 14.*

19. A hostile work environment was created by Ms. White and Mr. Kenney, this assignment was time sensitive and was worked on by Betty Johnson. Ms. Johnson would not provide me with her work product. In light of the fact that I had to start from scratch on an assignment that was due, I requested and received an extension. Before I left for travel a working draft had been developed, and she wanted all comments back by noon Wednesday. I received Barbara comments at 11:45a.m. Ms. White's comments were confusing, and I came to the conclusion that due to Ms. White's limited knowledge of Indian water settlements, I discussed this with Mr. Kenney on the phone and finalized the report.

8

Ms. White was angry that I finalized the report with Mr. Kenney. When the issue was raised to Mr. Kenney he sided with Ms. White. I believe a hostile work environment existed when Mr. Kenney refused to discuss any of the related aspects of this work assignment with me prior to issuing the assignment. Other similarly situated members of our staff are not treated this way. Contrary to what has been said here I did return to the office on Friday, March 24, 2000, as stated in the office staff meeting, to complete said assignment. *Declaration of Rene Cochise ¶ 15.*

20. On April 14, 2000, a hostile work environment was caused when Mr. Kenney was denied permission for Betty Johnson presence during the aforementioned meeting. Ms. Cochise could not see how Betty Johnson would be a neutral witness since Ms. Johnson reports directly to you. Mr. Kenney created a hostile work environment when I recommended Larry Todd, Acting Director, Operations be a "neutral witness". *Declaration of Rene Cochise ¶ 16.*

21. On April 25, 2000, a hostile work environment was caused by Mr. Kenney by suspending only my open travel authorization and no one else. This happened right after my trip to Phoenix, AZ. The trip in question was Federal-tribal Water Resources Workshop, April 19-21, 2000. Although I would routine mention my trips at staff meetings and this information was clearly posted on the travel board located just outside Mr. Kenney's office. What Mr. Kenney was angry about was my relocating to another hotel. I chose not to stay in the same hotel as Mr. Kenney; I did not feel safe being alone near him. So I transferred to another hotel close to the conference. This relocation made Mr. Kenney angry. The fact that I relocated to another hotel, for security reasons, created a hostile work environment. Mr. Kenney cannot be objective when dealing with issues

9

that surround me. Mr. Kenney does not treat other similarly situated members within our office in the manner. *Declaration of Rene Cochise ¶ 17.*

22. The April 28, 2000, "Letter of Reprimand" is directly related to Ms. Cochise prior EEO activity and is reprisal. The most recent EEO activity include; March 6, 22, 28, 30, and April 14, 25, 28, 2000. *Declaration of Rene Cochise ¶ 18.*

23. On April 28, 2000, a hostile work environment was created by Mr. Kenney when he denied Ms. Cochise travel voucher for reimbursement for the trip to Phoenix, AZ. Mr. Kenney cited that because Ms. Cochise had changed hotels she would have to pay the difference out of pocket. Mr. Kenney never once asked why the mix up and please check on this, but chose to accuse Ms. Cochise of being irresponsible for not staying at a hotel that offered government rates. Rather than communicate with Ms. Cochise, Mr. Kenney chose to threaten her.

The lack of discussion and the lack of courtesy to justify the increase created a hostile work environment. Once it was realized it was an error made by the hotel, a computer error. Mr. Kenney almost seemed disappointed and was clearly upset. This type of unprofessional behavior would not have been afforded to others on staff. *Declaration of Rene Cochise ¶ 19.*

24. Mr. Kenney created a hostile work environment when he stormed into Ms. Cochise office, slamming the door behind him so no one would see what he would do. Mr. Kenney asked for the voucher, when Ms. Cochise said "yes", let me make a copy. Mr. Kenney lunged towards Ms. Cochise and pinned her against her desk and then held her wrist and twisted her fingers until she released the voucher. Ms. Cochise was fearful

for her safety and physical well being. Ms. Cochise retreated to a lower level bathroom where she cleaned herself up. Ms. Cochise had soiled herself.

I was afraid of Mr. Kenney, and I am still afraid of him. Mr. Kenney is 230 lbs. and is 6'2, he is quite a bit larger than Ms. Cochise who is 5'0. *Declaration of Rene Cochise ¶ 20.*

25. Plaintiff filed two formal EEO complaints in 2000, one on February 29, 2000, and a second one around July 6, 2000. In both complaints, Plaintiff alleged that a hostile work environment had been created and that she was being discriminated against because of her race and prior EEO activity. ROI Exh. No. 1-1, vol. 1, p. 1-6. *Declaration of Rene Cochise ¶ 21.*

26. On April 24, 2001, Mr. Kenney created a hostile work environment by continually violating my right to a fair and impartial investigation and hearing. In reference to this incident, March 30, 2001, Mr. Kinney reiterated and confirmed he made the charges against me that he alone would be "conducting the investigation". Proper "due process" includes the investigation by a neutral party. Mr. Kenney repeated to Ms. Cochise the threats of criminal prosecution, Ms. Cochise considers this harassment and improper conduct. *Declaration of Rene Cochise ¶ 22.*

27. Plaintiff never filed a complaint based upon national origin as stated in the Administrative Judge's Order. *Complaint ¶¶ 1,8,9,12,13,26,29 and 30; Declaration of Rene Cochise ¶ 23.*

28. The Administrative Judge refused to credit my testimony or the testimony of Ms. Cochise's witnesses. He also refused to credit the documentary evidence, and incorrectly

11

concluded that Plaintiff filed a complaint based upon national origin discrimination. *Declaration of Rene Cochise ¶ 24.*

29.  On June 15, 2004, Plaintiff appealed the AJ's decision in which she alleged that (1) she was discriminated against when the Defendant failed to promote her to the career ladder GS-14 Policy Analyst Position; (2) that the AJ erred when he ruled that Plaintiff was not physically assaulted by her supervisor; and (3) when the AJ ruled that Plaintiff had not been retaliated against by the Defendant.  The allegations included all of the claims made in Plaintiff's complaint.  *Declaration of Rene Cochise ¶ 25.*

Respectfully submitted,

*Frazer Walton, Jr.*
Frazer Walton, Jr.
920 Burns Street, S.E.
Washington, D.C. 20019
(202) 584-7572

12